STATE OF NORTH CAROLINA v. LOURETHA MAE KING

No. COA05-1379

(Filed 20 June 2006)

### 1. Forgery— sufficiency of indictments

The trial court did not err by concluding the thirteen forgery indictments were not fatally defective, because: (1) the indictments set forth all of the elements of the offense; (2) the indict-

STATE v. KING

[178 N.C. App. 122 (2006)]

ments do not have to state the manner in which defendant forged the withdrawal form; (3) the indictments informed defendant of the date and time of each offense, the amount of money involved, and where the offense occurred; and (4) the indictments gave defendant notice of the charge against her and enabled the court to know what judgment to pronounce in case of conviction.

## 2. Evidence— prior crimes or bad acts—common plan or scheme—absence of mistake

The trial court did not abuse its discretion in a multiple obtaining property by false pretenses, multiple forgery, and multiple uttering case by admitting evidence found in a vehicle purchased by defendant which included a power of attorney defendant obtained naming her as attorney in fact and a third person as the principal and personal papers and identification cards belonging to two other persons, and evidence of defendant's purchase of a vehicle with the power of attorney naming the victim as the principal, because: (1) the State offered the evidence to show common plan or scheme and absence of mistake; (2) the evidence was particularly relevant since the victim had died prior to trial and was unavailable to testify; (3) the evidence tended to rebut defendant's contention that the victim initialed the power of attorney used to withdraw funds from the victim's bank account, and showed defendant engaged in a plan or scheme to obtain and use illegitimate powers of attorney to illegally withdraw funds from individuals' bank accounts including that of the victim; (4) and the incidents were sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of N.C.G.S. § 8C-1, Rule 403.

## 3. Forgery— motion to dismiss—sufficiency of evidence

The trial court erred by denying defendant's motion to dismiss on all but the first three forgery charges named in the indictment and the accompanying uttering charges, and defendant's ten convictions for forgery and ten convictions for uttering in docket numbers 04 CRS 55303, 04 CRS 55304, 04 CRS 55306, and 04 CRS 55307 are reversed, because: (1) signing as the agent of another without authority does not constitute forgery; and (2) all but the first three withdrawal slips from 04 CRS 555302 that defendant presented to the bank bore defendant's own signature and did not include the victim's name or purported signature.

**4. Appeal and Error— mootness—prior record level**

Although defendant contends the trial court erred in a multiple obtaining property by false pretenses, multiple forgery, and multiple uttering case by calculating defendant's prior record level, this argument is dismissed as moot because the case has already been remanded for resentencing, and the trial court is required to calculate defendant's prior record level upon resentencing.

Appeal by defendant from judgments entered 20 April 2005 by Judge Paul L. Jones in Wayne County Superior Court. Heard in the Court of Appeals 11 May 2006.

*Attorney General Roy Cooper, by Assistant Attorney General David P. Brenskelle, for the State.*

*Geoffrey W. Hosford, for defendant-appellant.*

TYSON, Judge.

Louretha Mae King ("defendant") appeals from judgments entered after a jury found her to be guilty of thirteen counts of obtaining property by false pretenses, thirteen counts of forgery, and thirteen counts of uttering. We find no error in part, reverse in part, and remand for resentencing.

I.  Background

In early 2004, Catherine Parker ("Parker") advertised in the newspaper for a care giver for her elderly sister, Agnes Canady ("Canady"). Defendant responded to the advertisement. Parker hired defendant to care of Canady every other Sunday from 2:00 p.m. until 9:00 p.m. Defendant worked as Canady's care giver for three or four Sundays before being terminated for failing to keep an appointment to care for Canady. Parker paid defendant for her services with three personal checks. The checks were drawn upon Canady's Wachovia Bank personal checking account. Parker signed the checks pursuant to a power of attorney, which Canady had issued to Parker in 1986. The checks bore Canady's name, address, telephone number, and checking account number. The last of the three checks was issued to defendant on 8 March 2004.

On 18 March 2004, defendant visited the law office of attorney Mario White ("White") in Clinton requesting him to prepare a power of attorney for her "grandmother" or "aunt." White prepared a power

of attorney naming Canady as the principal and defendant as attorney in fact. Defendant supplied the information necessary for White to prepare the power of attorney, including Canady's social security number. Defendant supplied her own address as the address for Canady. The power of attorney was not signed or notarized at White's office since Canady was not present to sign or initial the document. Defendant left White's office with the power of attorney that day.

Later that day, defendant visited Donnie McIntyre ("McIntyre"), the owner of McIntyre Funeral Home in Goldsboro, seeking to have Canady's power of attorney notarized. McIntyre knew defendant from church and "took for granted" that the power of attorney presented by defendant was legitimate. Defendant represented to McIntyre that Canady was defendant's grandmother and that she was caring for her. Defendant further represented to McIntyre that "she had some things that needed to be taken care of right then." At the time defendant presented the power of attorney to McIntyre for his notarization, it bore the initials "APC" next to portions of the document indicating defendant had the authority to engage in certain transactions on behalf of Canady. Defendant signed the document in McIntyre's presence and McIntyre notarized it.

The following day, 19 March 2004, defendant presented the power of attorney to Tesia Lemelle ("Lemelle"), the financial services manager of a Wachovia Bank branch located in Mt. Olive. Defendant told Lemelle that her aunt was in the hospital and that she was in "a rush." Lemelle processed the power of attorney. Defendant's name was added to Canady's account within the bank's computer system as a person authorized to conduct transactions on behalf of Canady. Defendant withdrew $3,500.00 from Canady's checking account using a generic withdrawal slip, which had been completed prior to her approach to the bank teller's window.

On 2 April 2004, defendant twice withdrew $500.00 from Canady's account. Thereafter, defendant made numerous other withdrawals from Canady's checking and money market accounts using generic withdrawal slips. On 5 April 2004, defendant twice withdrew $500.00. On 9 April 2004, defendant withdrew $500.00. Defendant withdrew $250.00 on 14 April 2004 and again on 15 April 2004. Defendant withdrew $500.00 on 16 April 2004. On 25 May 2004, defendant withdrew $4,500.00 from Canady's account and $1,000.00 more on 28 May 2004. On 2 June 2004, defendant withdrew another $1,000.00. Defendant withdrew $800.00 twice on 3 June 2004. On 8 June 2004, defendant withdrew $4,700.00.

STATE v. KING

[178 N.C. App. 122 (2006)]

Parker reviewed Canady's bank statement and discovered that money was being taken from her sister's checking and money market accounts. The statement was addressed to Canady with defendant's name beneath it followed by "POA." Parker discovered that defendant had been withdrawing money from Canady's account using generic withdrawal slips. Parker contacted Wachovia to inform them that money had been improperly withdrawn from her sister's accounts. Parker received two boxes of checks at her address from Wachovia that she had not ordered. The name designation on the checks was "Agnes P. Canady, Louretha King, POA."

After being contacted by Parker, Wachovia's loss management department commenced an investigation. The case was assigned to Reggie Whitley ("Whitley") on 16 April 2004. Whitley began the investigation on 19 April 2004 and discovered: (1) the power of attorney was invalid because it had never been signed by Canady; and (2) defendant's signature was located where Canady should have signed. On 27 April 2004, Whitley advised defendant the transactions she had made were not legitimate and to return the money she had withdrawn from Canady's account.

Defendant told Whitley that she had been working for Canady for many years, and that she was paying some of Canady's bills and "handling some of her own expenses too." Defendant further told Whitley that Canady was helping defendant establish a group home for drug addicts and recovering alcoholics. Defendant acknowledged that she owed the money and told Whitley she would bring $2,500.00 to Wachovia the following Friday. Defendant never repaid any funds. Instead, defendant continued to withdraw funds from Canady's account until June 2004.

On 2 June 2004, defendant attempted to withdraw funds from Canady's account at the Goldsboro Wachovia branch. The bank teller recognized defendant and asked her to come inside the bank. Bank personnel called the police who removed defendant from the premises. Defendant returned to the same branch later that day and attempted to withdraw money from one of Canady's accounts. Bank personnel instructed defendant to leave the bank and that she would not be allowed to withdraw any more money from Canady's accounts.

The following day, defendant withdrew $800.00 from Canady's account at Wachovia's Berkeley Branch in Goldsboro and $800.00 from Canady's account at Wachovia's Mt. Olive branch. Defendant's

**STATE v. KING**

[178 N.C. App. 122 (2006)]

final withdrawal from Canady's accounts took place on 8 June 2004 when she withdrew $4,700.00, leaving only $36.00 remaining in Canady's accounts.

Defendant was indicted on thirty-nine counts: thirteen counts of obtaining property by false pretenses in violation of N.C. Gen. Stat. § 14-100, thirteen counts of forgery in violation of N.C. Gen. Stat. § 14-119, and thirteen counts of uttering in violation of N.C. Gen. Stat. § 14-120. Defendant was tried in Wayne County Superior Court beginning 18 April 2005.

At trial, following a *voir dire* hearing, the trial court allowed testimony regarding a subsequent power of attorney that White had prepared for defendant. This power of attorney, prepared on 11 May 2004, names Robert L. Goodson ("Goodson") as the principal and defendant as the attorney in fact. The 11 May 2004 power of attorney was notarized by an employee of McIntyre Funeral Home. Goodson testified that defendant was a friend of his roommate, and that he had never given defendant a power of attorney or authorized her to act on his behalf. Using this power of attorney, defendant engaged in a failed attempt to withdraw funds from Goodson's Wachovia bank account.

Following another *voir dire* hearing, the trial court allowed testimony that on 23 March 2004, defendant visited a used car dealership and presented the power of attorney bearing Canady's name as principal and defendant as attorney in fact to purchase a Ford Explorer. Defendant represented she was Canady's guardian and that she was purchasing the Ford Explorer to transport Canady and pick up her medications. The Ford Explorer was financed in Canady's name for $11,909.85.

The trial court allowed testimony that the Ford Explorer was searched following defendant's arrest and was found to contain Goodson's social security number, his driver's license, his birth certificate, and the false power of attorney which defendant had obtained naming Goodson as principal and defendant as attorney in fact. The vehicle also contained Parker's social security number, date of birth, checking account numbers, bank account balance amounts, and personal bank identification number.

The jury found defendant to be guilty on all thirty-nine counts named in the indictment. Defendant was sentenced within the presumptive range with a Prior Record Level IV to thirteen consecutive prison terms of ten to twelve months. Defendant appeals.

## II.  Issues

Defendant argues: (1) the forgery indictments were fatally defective; (2) the trial court abused its discretion in admitting evidence in violation of the North Carolina Rules of Evidence, Rule 404(b); (3) the trial court erred in failing to dismiss the forgery charges; and (4) the trial court erred in calculating her Prior Record Level.

## III.  Forgery Indictments

[1] Defendant argues the bills of indictment for forgery were fatally defective and judgment should be arrested. She asserts the bills of indictment failed to sufficiently state the elements of forgery. We disagree.

It is well established that an indictment must charge all of the essential elements of the alleged criminal offense. *State v. Thomas,* 153 N.C. App. 326, 335, 570 S.E.2d 142, 147, *disc. rev. denied,* 356 N.C. 624, 575 S.E.2d 759 (2002) (citation omitted). The crime of forgery requires allegations of three elements: "(1) There must be a false making or alteration of some instrument in writing; (2) there must be a fraudulent intent; and (3) the instrument must be apparently capable of effecting a fraud." *State v. Phillips,* 256 N.C. 445, 447, 124 S.E.2d 146, 147 (1962). Here, the thirteen forgery indictments, of which "Count 2" is representative, provide as follows:

AND THE JURORS FOR THE STATE UPON THEIR OATH DO FURTHER PRESENT that on or about the 19th day of March, 2004, in Wayne County Louretha Mae King unlawfully, willfully, feloniously and with the intent to injure and defraud, did forge, falsely make, and counterfeit a Wachovia withdrawal form, which was apparently capable of effecting a fraud, and which is as appears on the copy attached hereto as Exhibit "A" and which is hereby incorporated by reference in this indictment as if the same were fully set forth.

Defendant asserts the indictments are defective because they must "allege how [defendant] committed a false making." The language of the indictment clearly sets forth all of the elements of the offense. *Id.* The indictments are not fatally defective for failing to state the manner in which defendant forged the withdrawal form.

Further, the exhibits attached to the forgery indictments are copies of the withdrawal slips defendant used to remove funds from

Canady's bank accounts. The exhibits show the date and time of day, amount of money withdrawn, account number, and particular bank branch from which the funds were withdrawn. The forgery indictments alleged all of the necessary elements of the offense and informed defendant of the date and the time of each offense, the amount of money involved, and where the offense occurred. The forgery indictments fulfilled the purposes of an indictment, which are: "(1) to give the defendant notice of the charge against [her] to the end that [she] may prepare [her] defense and to be in a position to plead former acquittal or former conviction in the event [she] is again brought to trial for the same offense; [and] (2) to enable the court to know what judgment to pronounce in case of conviction." *State v. Burton*, 243 N.C. 277, 278, 90 S.E.2d 390, 391 (1955). This assignment of error is overruled.

## IV. Character Evidence

**[2]** Defendant argues the trial court abused its discretion in admitting evidence, in violation of the North Carolina Rules of Evidence, Rule 404(b), of: (1) the power of attorney she obtained naming her as attorney in fact and Goodson as the principal; (2) personal papers and identification cards belonging to Parker and Goodson found in her vehicle after her arrest; and (3) her purchase of the Ford Explorer with the power of attorney naming Canady as the principal. Defendant argues this evidence is irrelevant and was offered solely to show her propensity to commit the offenses charged. We disagree.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2005) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

In *State v. Coffey*, our Supreme Court stated that Rule 404(b) is:

a clear general rule of inclusion of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but one exception requiring its exclusion if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990).

> Thus, even though evidence may tend to show other crimes, wrongs, or acts by the defendant and his propensity to commit them, it is admissible under Rule 404(b) so long as it also "is relevant for some purpose other than to show that defendant has the propensity for the type of conduct for which he is being tried."

*Id.* at 279, 389 S.E.2d at 54. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2005).

The State offered this evidence to show "common plan or scheme" and "absence of mistake." This evidence was particularly relevant since Canady had died prior to trial and was unavailable to testify. Defendant contended Canady had initialed the power of attorney which she utilized to withdraw funds from Canady's bank accounts. This evidence tended to rebut defendant's contention and showed she engaged in a plan or scheme to obtain and use illegitimate powers of attorney to illegally withdraw funds from individuals' bank accounts, and that Canady was one of the victims of this scheme.

"The use of evidence under Rule 404(b) is guided by two constraints: similarity and temporal proximity." *State v. Bidgood,* 144 N.C. App. 267, 271, 550 S.E.2d 198, 201, *cert. denied,* 354 N.C. 222, 554 S.E.2d 647 (2001) (citation omitted). The incidents are "sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of N.C.G.S. § 8C-1, Rule 403." *State v. Boyd,* 321 N.C. 574, 577, 364 S.E.2d 118, 119 (1988). This evidence was relevant and admissible pursuant to Rule 404(b). Under an abuse of discretion review, defendant has failed to show the admission of this evidence was "manifestly unsupported by reason or [was] so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis,* 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988). This assignment of error is overruled.

## V. Motion to Dismiss

[3] Defendant argues the trial court erred by denying her motion to dismiss the forgery charges at the close of the State's evidence. We agree in part.

When ruling on a motion to dismiss, the trial court must decide "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2)

of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citing *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2001). Evidence is viewed "in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *Id.* at 378-79, 526 S.E.2d 455 (citing *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992)).

As previously noted, the essential elements of the offense of forgery are: (1) "a false making or alteration of some instrument in writing;" (2) "fraudulent intent;" and (3) "the instrument must be apparently capable of effecting a fraud." *Phillips*, 256 N.C. at 447, 124 S.E.2d at 147. Defendant contends the State failed to present sufficient evidence of the first element of forgery. The first three withdrawal slips defendant presented to the bank, dated 19 March and 2 April 2004, bore the forged signature of Canady along with defendant's signature.

> To show that the defendant signed the name of some other person to an instrument, and that he passed such instrument as genuine, is not sufficient to establish the commission of a crime. It must still be shown that it was a false instrument, and this is not established until it is shown that a person who signed another's name did so without authority.

*Id.* at 448, 124 S.E.2d at 148 (quotation omitted). The State presented sufficient evidence from which a jury could conclude that defendant forged Canady's name and uttered withdrawal slips without Canady's authority. The trial court did not err in denying defendant's motion to dismiss with respect to these three transactions in docket number 04 CRS 55302.

As for the remaining withdrawal slips defendant presented to the bank, each contains a representation stating defendant was the account holder. Each of these withdrawal slips contains the language, "I wish to withdraw from my account," along with one of Canady's account numbers and defendant's signature alone. Our Supreme Court's holding in *State v. Lamb*, 198 N.C. 423, 152 S.E. 154 (1930) controls this issue.

In *Lamb*, the Court held, "Forgery is the attempted imitation of another's personal act. Hence *signing as the agent of another without authority does not constitute forgery*." 198 N.C. at 425, 152 S.E. at 155 (citations omitted) (emphasis supplied).

> If a man draw . . . a bill of exchange in the name of another, without his authority it is forgery. *But if he sign it with his own name, per procuration . . . it is no forgery.* The reason is that forgery cannot be predicated of a writing not intended to be a semblance of something which it does not purport to be and which is in itself not false.

*Id.* at 426, 152 S.E. at 156 (quotation omitted) (emphasis supplied). In *Lamb*, our Supreme Court reversed the defendant's forgery conviction because the State failed to prove the defendant's writing falsely purported to be the writing of another. 198 N.C. at 426-27, 152 S.E. at 156.

The United States Supreme Court cited *Lamb* in *Gilbert v. United States*, 370 U.S. 650, 8 L. Ed. 2d 750 (1962) and considered the issue of agency endorsement. The defendant in *Gilbert* was convicted of forgery under 18 U.S.C. § 495. The defendant, an accountant, forged the endorsements of others on government tax-refund checks and endorsed his own name on the checks as "trustee." *Id.* at 653, 8 L. Ed. 2d at 753. In considering the question of whether "forgery" under 18 U.S.C. § 495 included agency endorsement, the Court inquired into the common law meaning of forgery. *Id.* at 655, 8 L. Ed. 2d at 754 ("For in the absence of anything to the contrary it is fair to assume that Congress used that word in the statute in its common-law sense.").

Mr. Justice Harlan, speaking for an unanimous Court, held:

> In 1847 it was decided in the English case of *Regina v. White*, 2 Car & K 404, 175 Eng Rep 167 (Nisi Prius, Book 6), that "indorsing a bill of exchange under a false assumption of authority to indorse it per procuration, is not forgery, there being no false making." . . . [T]he *Regina v. White* view of forgery at common law was early accepted in a federal case as representing the English common law. *In re Extradition of Tully*, 20 F 812. The same view of forgery has since been followed in most of the state and federal courts in this country. *See, e.g., . . . State v. Lamb*, 198 N.C. 423, 425-426, 152 S.E. 154, 155-156 . . . .

*Id.* at 655-56, 8 L. Ed. 2d at 754-55. The Court held " 'forge' in § 495 should not be taken to include an agency endorsement." *Id.* at 657, 8 L. Ed. 2d at 755. Because our forgery statute does not include a definition of "forgery," we review the common law for the meaning of the word.

Here, all but the first three withdrawal slips defendant presented to the bank bore her own signature, and did not include Canady's name or purported signature. Under the common law, our Supreme Court's precedent in *Lamb*, and the United States Supreme Court's precedent in *Gilbert*, defendant cannot be guilty of forgery for the transactions in which she signed her own name on the withdrawal slip. The trial court erred by denying defendant's motion to dismiss on all but the first three forgery charges named in the indictment and the accompanying uttering charges. *State v. Greenlee*, 272 N.C. 651, 657, 159 S.E.2d 22, 26 (1968) ("Uttering a forged instrument consists in offering to another the forged instrument with the knowledge of the falsity of the writing and with intent to defraud.") Defendant's ten convictions for forgery and ten convictions for uttering in docket numbers 04 CRS 55303, 04 CRS 55304, 04 CRS 55306, and 04 CRS 55307 are reversed.

## VI. Prior Record Level Points

**[4]** Defendant argues the trial court erred by calculating her prior record level points because it counted two separate felony convictions that occurred during the same superior court session. Because we have remanded this case to the trial court for resentencing, this issue is moot. The trial court is required to calculate defendant's prior record level upon resentencing her. N.C. Gen. Stat. § 15A-1340.13 (2005) ("Before imposing a sentence, the court shall determine the prior record level for the offender pursuant to G.S. 15A-1340.14."). This assignment of error is dismissed.

## VII. Conclusion

Defendant has failed to show that the forgery indictments were fatally defective or that the trial court abused its discretion in admitting evidence to show her propensity to commit crimes in violation Rule 404(b). The trial court did not err in failing to dismiss the first three forgery and uttering charges listed on defendant's indictment. Sufficient evidence was presented that defendant forged Canady's name on the first three withdrawal slips she presented to the bank. We find no error in defendant's three convictions for forgery and three convictions for uttering in docket number 04 CRS 55302.

The trial court erred in failing to dismiss the remaining forgery and uttering convictions pursuant to our Supreme Court's decision in *Lamb*, 198 N.C. at 426-27, 152 S.E. at 156. Defendant signed her own name, not Canady's, to the withdrawal slips she used in procuring the

funds from the bank. Canady's name or purported signature does not appear on the withdrawal slips. The trial court erred by denying defendant's motion to dismiss all but the first three forgery and uttering charges listed in the indictment. This case is remanded for resentencing.

In all other respects, we hold defendant received a fair trial free from errors she preserved, assigned, and argued. We find no error in defendant's thirteen obtaining property by false pretenses convictions. We reverse defendant's ten forgery convictions and ten uttering convictions in docket numbers 04 CRS 55303, 04 CRS 55304, 04 CRS 55306, and 04 CRS 55307 and remand for resentencing. The trial court is required to calculate defendant's prior record level upon resentencing her.

No error in part, Reversed in part, and Remanded for Resentencing.

Judges McCULLOUGH and HUDSON concur.