STATE OF NORTH CAROLINA v. ALEX CORTES-SERRANO

No. COA08-591

(Filed 17 March 2009)

**1. Rape— statutory rape—motion to dismiss—sufficiency of evidence—age—testimony**

The trial court did not err by denying defendant's motion to dismiss the charges of statutory rape even though defendant contends the State failed to produce substantial evidence of the ages of both the victim and defendant at the time of the alleged crime because: (1) nothing in N.C.G.S. § 14-27.7A(a) or other precedent requires that these elements be proven by the introduction of birth certificates or other certified copies of birth records; and (2) the testimony of the victim and the victim's mother that the

victim was thirteen years old at the pertinent time, and defendant's testimony that he was twenty-one years old at the pertinent time, was sufficient evidence.

**2. Rape— statutory rape—motion to dismiss—sufficiency of evidence—continuous course of conduct not recognized in North Carolina**

The trial court did not err by denying defendant's motion to dismiss one of the two statutory rape charges even though defendant contends the two acts were in the nature of a continuous transaction rather than separate and distinct crimes because: (1) defendant's reliance on *Clark*, 161 N.C. App. 316, is misplaced when defendant in that case did not assign error to the number of charges against him and thus that issue was not addressed; and (2) the Court of Appeals has previously held that North Carolina law does not recognize the continuous course of conduct theory.

**3. Confessions and Incriminating Statements— recorded interview—voluntariness**

The trial court did not err in a double statutory rape case by denying defendant's motion to suppress a recorded interview conducted by a detective that defendant contends improperly induced a confession through promises of a more favorable outcome because: (1) there was ample evidence in the record to support the trial court's findings that no improper promises or threats were made to defendant to induce an involuntary confession; and (2) the trial court's findings support its conclusion that, under the totality of circumstances, defendant's will was not overborne and that his statement was freely and voluntarily given.

**4. Evidence— prior crimes or bad acts—cross-examination**

The trial court did not abuse its discretion in a double statutory rape case by allowing the district attorney to cross-examine defendant about unrelated charges and criminal activity because: (1) defendant lost the benefit of an objection to this testimony since the State's cross-examination did not go outside the scope of the evidence introduced by defendant, but instead explained and rebutted defendant's testimony; and (2) defendant failed to show a reasonable possibility that a different result would have been reached had this line of questioning been prohibited.

**5. Appeal and Error; Sentencing— preservation of issues—cruel and unusual punishment argument—failure to raise below—rational legislative policy**

Defendant's sentence in a double statutory rape case of two consecutive terms of 336-413 months did not constitute cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution and article I, sections 19 and 27 of the North Carolina Constitution because: (1) defendant did not present this argument at trial, and is it well-established that appellate courts ordinarily will not pass upon a constitutional question unless it was raised in the court below; and (2) even assuming *arguendo* that defendant adequately preserved the issue for appeal, the Court of Appeals has previously held that the sentencing scheme under N.C.G.S. § 14-27.7A reflects a rational legislative policy, is not disproportionate to the crime, and is therefore constitutional.

Appeal by defendant from judgment entered 17 September 2007 by Judge Ola Lewis in Brunswick County Superior Court. Heard in the Court of Appeals 12 January 2009.

*Roy Cooper, Attorney General, by Alexandra S. Gruber, Assistant Attorney General, for the State.*

*William D. Spence for defendant-appellant.*

MARTIN, Chief Judge.

Alex Cortes-Serrano ("defendant") appeals from the judgment entered upon his conviction by a jury of two counts of statutory rape. For the reasons stated below, we find no error.

At trial, the State presented evidence which tended to show that on 12 September 2005, defendant was arrested on charges of burglary, kidnapping, and sexual assault in connection with a home invasion that occurred in Brunswick County. Defendant was taken into custody together with his roommate, McCormick Cassiano ("Cassiano"), who was also a suspect in the home invasion. Subsequently, Cassiano provided deputies with information that defendant had been sexually involved with K.N., a juvenile. Defendant was escorted to the children's interview room at the Brunswick County Sheriff's Department and interviewed there by Detective Simpson. An audio-video recording was made of the interview and is included in the record on appeal. Prior to questioning,

Detective Simpson advised defendant of his *Miranda* rights. Defendant indicated that he understood each of his rights and signed a *Miranda* waiver form, writing his birth date as 29 March 1984 beside his signature.

After signing the *Miranda* waiver form, defendant proceeded to describe his relationship with K.N., the daughter of his twin brother's girlfriend. Defendant admitted to having sexual intercourse with K.N. in July and August of 2005, when K.N. was thirteen years old and defendant was twenty-one years old. Defendant also stated that he knew his relationship with K.N. was wrong, and that he could go to jail for it. When defendant expressed concern that he would "go to jail for the rest of [his] life," Detective Simpson responded, "Force is one thing. Consent is another." Detective Simpson told defendant that she "had been doing this for ten years. There's been many a people, even grown men, sitting in that chair, well not that chair . . . that's raped their own children and been getting probation." Detective Simpson also indicated that due to the number of times defendant had admitted having sex with K.N., the State would likely not "stack charges" against defendant. However, Detective Simpson informed defendant that all she could do "is go to the D.A. and tell him what the evidence is," and that the District Attorney's office would then decide the charges. Later she reiterated, "Honestly, I can't say what will happen."

During the interview, which lasted approximately one hour and fifteen minutes, defendant, who was wearing no shirt, wrapped himself in a blanket given to him by deputies. Although his legs were shackled, defendant's hands were free and he frequently gestured with his hands while talking. Later in the interview, defendant allowed the blanket to fall around his waist and legs, and did not appear to be uncomfortable as he answered Detective Simpson's questions. Defendant did not indicate that he desired to speak with an attorney or to cease speaking with Detective Simpson. Following the interview, Detective Simpson stated, "If you want to write a statement, I'll give you a piece of paper." Defendant later wrote a statement in which he admitted to having sex with K.N. "about 10 times in 2 month period [sic]," noting "I din't [sic] forse [sic] her no time."

Based on the evidence gathered by Detective Simpson, defendant was subsequently indicted by the Brunswick County Grand Jury on two counts of statutory rape, in violation of N.C.G.S. § 14-27.7A(a). Prior to trial, defendant made a motion in limine, seeking to preclude evidence at trial of unrelated crimes or acts committed by defendant. The trial court allowed the motion, but warned, "He better not open

the door." Also prior to trial, defendant moved to suppress the statement made to Detective Simpson, arguing that the statement was made in violation of his constitutional rights. After a voir dire hearing at which the trial court reviewed the audio-video recording of Detective Simpson's interview with defendant and heard evidence and arguments, the trial court made the following findings of fact relevant to this appeal:

5. That the defendant was given his *Miranda* warnings and waived same in the Brunswick County Sheriff's Department, said warnings were recorded on video and introduced as State's Exhibit Voir Dire #1;

. . . …

8. That the defendant did not complain and appeared to be coherent answering Detective Simpson's questions and appeared to understand said questioning;

. . . .

10. That defendant did appear to be cold and a blanket was provided for him;

11. When he requested water it was provided for him;

12. That the only Law Enforcement Officer in the room was Detective Simpson;

13. That there was no threat, or suggested violence, or show of violence by Detective Simpson to persuade or induce the defendant to make a statement;

14. That during the interview the defendant freely admitted to crimes Detective Simpson did not know about and to having sexual relations with a 13 year old, said charges presently before this Court;

15. That during the interview Detective Simpson told the defendant that she has seen those who have raped children receive probation and that they are not going to stack charges;

16. That Detective Simpson further said it would be up to the District Attorney's Office to decide the charges;

17. That after the interview the defendant was asked if he wanted to write a statement;

18. That defendant was provided pen and paper and wrote a statement, State's Exhibit Voir Dire #3;

19. That under the totality of the circumstances, the defendant's confession was voluntarily and understandingly given;

20. That any false representations by Detective Simpson was [sic] not egregious or overreaching, and did not improperly induce hope or fear and did not promise any relief from any criminal charge;

Based on these and other findings of fact, the trial court concluded as a matter of law that:

1. None of defendant's Constitutional Rights, either Federal or State, were violated by his arrest and interrogation;

2. No promises or inducements for defendant to make a statement were made;

3. No threat or suggested violence or show of violence to persuade defendant to make a statement [was made];

4. The statement made by defendant to Detective Simpson on September 13, 2005 was made freely, voluntarily and understandingly;

5. The defendant fully understood his Constitutional Right to remain silent and his Constitutional Right to counsel and all other rights;

6. The defendant freely, knowingly, intelligently and voluntarily waived each of those rights and thereupon made the statement to the above mentioned officer.

Based upon these conclusions, the trial court denied defendant's motion to suppress the recorded statement.

At trial, K.N.'s mother testified that K.N. was thirteen years old after 1 July 2005. K.N. also testified, describing how she met defendant when he moved into her mother's house in the summer of 2005, after her thirteenth birthday. K.N. testified that she and defendant had vaginal intercourse two or more times and oral sex one time in July and August of 2005, just before she entered the eighth grade.

Defendant also testified at trial, stating that he was born on 29 March 1984 and that he was twenty-one years old at the time he had sexual intercourse with K.N. Defendant testified that he had met K.N.

after he was released from prison and began living with K.N.'s mother. He described how they became romantically involved and stated, "I do love her, man." Defendant also testified that, on the night of his arrest, he had been doing drugs and that, as a result, when he wrote his statement, he "didn't know what I wrote down." When asked why he would write that he had sex with K.N. ten times, instead of once or twice, defendant responded:

> I really, it's just like, first, I was scared, man, because you know if I come to jail, you know, and they trying to tell me that I done raped a Mexican girl, whatever and first what they say they told me that—

After defendant's direct examination, the State, outside the presence of the jury, argued that it should be allowed to cross-examine defendant regarding the unrelated rape charges. The State contended that, although such evidence was initially precluded by defendant's motion in limine, defendant's testimony regarding the rape of "a Mexican girl" had opened the door to this evidence as relevant to defendant's credibility. The trial court informed counsel that it would listen carefully to the State's cross-examination of defendant and exclude anything "beyond what the DA should be addressing," but would otherwise allow the State to cross-examine defendant regarding the unrelated charges. When cross-examination resumed, the following exchange occurred:

> Q: And during the time span of that hour they were questioning you about the rape of this Mexican girl, you were talking to them about other crimes, correct?
>
> A: Yes, sir.
>
> Q: All right. And those other crimes that you were talking about were crimes that—
>
> [Defense Counsel]: Objection.
>
> Q: —that you committed, correct?
>
> THE COURT: Note it for the record.
>
> A: Some of it. And like the man that got me here, you know, what you, how would you feel if a man is trying to put you in a spot where you facing, one, two, three life sentences? Would you let a man just thank you for doing that or would you try to get a man down?

Q: And the man you are talking is his name is [sic] McKermit Cassiano, right?

A: Cassiano, yes.

. . . .

Q: During the time that you were being questioned for this one-hour span, some of those crimes that you were talking about that you told the detective, isn't it true that the detective didn't know about it?

[Defense Counsel]: Objection.

THE COURT: Overruled.

[Defense Counsel]: Well, he can't testify as to what the detective knew or didn't know.

THE COURT: Oh, sustained as to form, sir.

Q: The crimes that you were talking about, what crimes were they?

[Defense Counsel]: Objection. I would instruct him not to answer that question.

THE COURT: Okay.

[Defense Counsel]: Under the Fifth Amendment.

THE COURT: Okay. Ladies and gentlemen, the defendant has the right against self-incrimination and he can take the Fifth Amendment. It's his constitutional right if he chooses to do so.

At the close of all the evidence, defendant made a motion to dismiss the charges for insufficiency of the evidence, arguing that the evidence was insufficient to establish every element of the crimes charged and defendant's identity as the perpetrator. The trial court denied defendant's motion. Subsequently, the jury returned a verdict of guilty of two counts of statutory rape. The trial court sentenced defendant to an active sentence within the presumptive range of 336 months minimum to 413 months maximum.

I.

[1] In support of the assignments of error brought forward in his brief, and thus not deemed abandoned under N.C.R. App. P. 28(b)(6), defendant makes five central arguments. First, defendant argues because the State did not meet its burden of producing evidence of

every element of the crime of statutory rape, the trial court erred in denying his motion to dismiss for insufficiency of the evidence. As part of this argument, defendant contends the State failed to produce substantial evidence of the ages of both K.N. and defendant at the time they had intercourse. He contends the State cannot meet its burden of production by testimony alone, but must produce the birth certificates of both parties. We disagree.

"When ruling on a motion to dismiss, the trial court must decide 'whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " *State v. King*, 178 N.C. App. 122, 130-31, 630 S.E.2d 719, 724 (2006) (quoting *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citing *Thompson v. Wake Cty. Bd. of Educ.*, 292 N.C. 406, 414-15, 233 S.E.2d 538, 544 (1977)). In reviewing challenges to the sufficiency of evidence, this Court must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. *See State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992) (citing *State v. Small*, 328 N.C. 175, 180, 400 S.E.2d 413, 417 (1991)). " 'Contradictions and discrepancies do not warrant dismissal of the case—they are for the jury to resolve.' " *Id.* at 544, 417 S.E.2d at 761 (quoting *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 653 (1982)).

Here, defendant was charged with two counts of statutory rape of a thirteen-year-old person under N.C.G.S. § 14-27.7A(a), which provides:

A defendant is guilty of a Class B1 felony if the defendant engages in vaginal intercourse or a sexual act with another person who is 13, 14, or 15 years old and the defendant is at least six years older than the person, except when the defendant is lawfully married to the person.

N.C. Gen. Stat. § 14-27.7A(a) (2007). Although the ages of the perpetrator and the victim at the time of the alleged act are essential elements of statutory rape, *see State v. Locklear*, 138 N.C. App. 549, 552, 531 S.E.2d 853, 855, *disc. review denied*, 352 N.C. 359, 544 S.E.2d 553 (2000), nothing in N.C.G.S. § 14-27.7A(a) or our precedent requires that these elements be proven by the introduction of birth

certificates or other certified copies of birth records. To the contrary, our Supreme Court has held that where the victim's testimony was the only evidence of her age at the time of the alleged sexual act, the trial court correctly denied defendant's motion to dismiss for insufficient evidence. *State v. Degree*, 322 N.C. 302, 308, 367 S.E.2d 679, 683 (1988). Similarly, a defendant's own testimony may also be sufficient evidence for the State to meet its burden regarding the age element of a sex offense. *See State v. Rhodes*, 321 N.C. 102, 104, 361 S.E.2d 578, 580 (1987) (upholding defendant's conviction of first degree rape where age of defendant was an essential element and defendant admitted his age during trial testimony). *See also State v. Clark*, 161 N.C. App. 316, 588 S.E.2d 66 (2003) (holding that defendant's in-trial statements regarding his age were properly admitted under admission by a party-opponent exception to the hearsay rule), *disc. review denied*, 358 N.C. 157, 593 S.E.2d 81 (2004).

Defendant cites *State v. Wade*, 224 N.C. 760, 32 S.E.2d 314 (1944) for the premise that the State must offer birth certificates of the defendant and victim to prove the age elements of N.C.G.S. § 14-27.7A(a). However, in *Wade*, after the victim testified to the circumstances of the offense, the State offered the victim's birth certificate as *corroboration* of the victim's testimony regarding her age at the time of the offense. *See id.* at 761, 32 S.E.2d at 314-15. The *Wade* Court did not indicate that the introduction of the victim's birth certificate was required, but instead held that the testimony of the victim and her mother, along with the victim's birth certificate, constituted "abundant evidence" in support of defendant's conviction. *Id.* As such, defendant's reliance on *Wade* is misplaced.

Here, K.N.'s mother and K.N. both testified that K.N. was thirteen years old in August of 2005. K.N. testified that she and defendant had vaginal intercourse at least twice and oral sex once in July and August of 2005. Defendant testified that he was twenty-one years old in July and August of 2005 and that he had sexual intercourse with K.N. twice during that period. When viewed in the light most favorable to the State, the testimony of K.N., K.N.'s mother, and defendant was sufficient to allow the two charges of statutory rape to go to the jury. Thus, the trial court did not err by denying defendant's motion to dismiss.

II.

[2] Next, defendant assigns error to the trial court's denial of defendant's motion to dismiss one of the two statutory rape charges, argu-

ing that the two acts were in the nature of a "continuous transaction" rather than separate and distinct crimes. As part of this argument, defendant contends that, because his relationship with K.N. was a "consensual," boyfriend-girlfriend relationship, there was insufficient evidence to show two separate acts of statutory rape. Defendant cites *Clark*, 161 N.C. App. 316, 588 S.E.2d 66 in support of this premise. *Clark* involved a defendant who was convicted and sentenced upon only one count of statutory rape even though his romantic relationship with the victim lasted nearly a year. *Id.* at 317, 588 S.E.2d at 66-67. However, the defendant in *Clark* did not assign error to the number of charges against him and thus we did not address the issue. *Id.* at 318, 588 S.E.2d at 67. Therefore, defendant's reliance upon *Clark* is misplaced.

Furthermore, we have previously noted that North Carolina law does not recognize the "continuous course of conduct" theory:

> In *State v. Dudley*, 319 N.C. 656, 659, 356 S.E.2d 361, 363 (1987), the Supreme Court cited with approval language from *State v. Small*, 31 N.C. App. 556, 230 S.E.2d 425 (1977): "Generally rape is not a continuous offense, but each act of intercourse constitutes a distinct and separate offense." The General Assembly has criminalized each act of statutory rape, not a course of conduct. Any changes in the manner in which a course of criminal conduct is punished must come from the legislative branch and not from the judicial branch.

*State v. Bullock*, 178 N.C. App. 460, 473, 631 S.E.2d 868, 877 (2006). As such, defendant's argument is without merit and this assignment of error is overruled.

### III.

[3] Defendant next assigns error to several findings of fact and conclusions of law made by the trial court in denying his motion to suppress the recorded interview conducted by Detective Simpson. For purposes of this appeal, these assignments of error may be condensed into one issue. Defendant contends that Detective Simpson improperly induced his confession through promises of a more favorable outcome and, as such, defendant's confession was involuntary and thus inadmissible. We disagree.

The standard of review in determining whether a trial court properly denied a motion to suppress is whether the trial court's findings of fact are supported by the evidence and whether its conclu-

sions of law are, in turn, supported by those findings of fact. *State v. Cockerham*, 155 N.C. App. 729, 736, 574 S.E.2d 694, 699, *disc. review denied*, 357 N.C. 166, 580 S.E.2d 702 (2003). "The trial court's findings 'are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting.' " *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (quoting *State v. Bebington*, 352 N.C. 489, 498, 532 S.E.2d 496, 501 (2000), *cert. denied*, 531 U.S. 1165, 148 L. Ed. 2d 992 (2001)). "The determination of whether a defendant's statements are voluntary and admissible 'is a question of law and is fully reviewable on appeal.' " *State v. Maniego*, 163 N.C. App. 676, 682, 594 S.E.2d 242, 246 (quoting *State v. Greene*, 332 N.C. 565, 580, 422 S.E.2d 730, 738 (1992)), *appeal dismissed*, 358 N.C. 737, 602 S.E.2d 369 (2004). We look "at the totality of the circumstances of the case in determining whether the confession was voluntary." *Id.* at 682, 594 S.E.2d at 246 (quoting *State v. Jackson*, 308 N.C. 549, 581, 304 S.E.2d 134, 152 (1983)). Factors we consider include:

> whether defendant was in custody, whether he was deceived, whether his *Miranda* rights were honored, whether he was held incommunicado, the length of the interrogation, whether there were physical threats or shows of violence, whether promises were made to obtain the confession, the familiarity of the declarant with the criminal justice system, and the mental condition of the declarant.

*Id.* at 682, 594 S.E.2d at 246 (quoting *State v. Hardy*, 339 N.C. 207, 222, 451 S.E.2d 600, 608 (1994)). A confession may be used against a defendant if it is "the product of an essentially free and unconstrained choice by its maker." *Hardy*, 339 N.C. at 222, 451 S.E.2d at 608 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26, 36 L. Ed. 2d 854, 862 (1973)). However, where a defendant's "will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." *Id.* Our Supreme Court stated in *State v. Jackson* that:

> [W]hile deceptive methods or false statements by police officers are not commendable practices, standing alone they do not render a confession of guilt inadmissible. The admissibility of the confession must be decided by viewing the totality of the circumstances, one of which may be whether the means employed were calculated to procure an untrue confession.

308 N.C. 549, 574, 304 S.E.2d 134, 148 (1983) (citations omitted).

In the present case, the trial court made detailed findings of fact regarding defendant's recorded confession. Our review of the video recording, included in the record on appeal, reveals ample evidence in the record to support the trial court's findings that no improper promises or threats were made to defendant to induce an involuntary confession. Further, we conclude that the trial court's findings support its conclusion that, under the totality of the circumstances, defendant's will was not overborne and that his statement was freely and voluntarily given. Defendant's assignments of error relating to the suppression of his confession are, therefore, overruled.

IV.

**[4]** Defendant next argues that the trial court erred by allowing the district attorney to cross-examine defendant about unrelated charges and criminal activity, creating unfair prejudice in the minds of the jury. As part of this argument, defendant contends that the State was precluded, by the trial court's ruling on defendant's motion in limine and by the North Carolina Rules of Evidence, from offering evidence concerning forcible rape charges. We disagree.

"The standard of review for this Court assessing evidentiary rulings is abuse of discretion." *State v. Boston,* 165 N.C. App. 214, 218, 598 S.E.2d 163, 166 (2004) (citing *State v. Meekins,* 326 N.C. 689, 696, 392 S.E.2d 346, 350 (1990)). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Campbell,* 359 N.C. 644, 673, 617 S.E.2d 1, 19 (2005) (quoting *State v. Hennis,* 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)), *cert. denied,* 547 U.S. 1073, 164 L. Ed. 2d 523 (2006). On appeal of an evidentiary ruling, "[t]he burden is on the appellant to not only show error, but also to show that he was prejudiced and a different result would have likely ensued had the error not occurred." *Suarez v. Wotring,* 155 N.C. App. 20, 30, 573 S.E.2d 746, 752 (2002), *disc. review denied and cert. denied,* 357 N.C. 66, 579 S.E.2d 107 (2003).

"It is well-established that the benefit of any objection to the introduction of evidence is lost where the evidence is previously admitted without objection, and particularly, where defendant is responsible for first introducing the evidence." *State v. Rhue,* 150 N.C. App. 280, 286, 563 S.E.2d 72, 76 (2002) (citing *State v. Hunt,* 325 N.C. 187, 196, 381 S.E.2d 453, 459 (1989); *State v. Moses,* 316 N.C. 356, 362, 341 S.E.2d 551, 554-55 (1986)). Furthermore, our Supreme Court has held that, "[w]here one party introduces evidence as to a particu-

lar fact or transaction, the other party is entitled to introduce evidence in *explanation* or *rebuttal* thereof, even though such latter evidence would be incompetent or irrelevant had it been offered initially." *State v. Albert*, 303 N.C. 173, 177, 277 S.E.2d 439, 441 (1981) (citing *State v. Patterson*, 284 N.C. 190, 200 S.E.2d 16 (1973); *State v. Black*, 230 N.C. 448, 53 S.E.2d 443 (1949)) (emphasis added). *See also* N.C.G.S. § 15A-1226 (b) (2007) ("The judge in his discretion may permit any party to introduce additional evidence at any time prior to verdict.").

Here, defendant correctly points out that the trial court, in its ruling on defendant's motion in limine, had precluded the State from raising the unrelated charges of forcible rape. The State did not raise the issue at trial. Instead, defendant broached the subject during his direct examination by testifying, when asked why he would write that he had sex with K.N. ten times instead of once or twice, that he "was scared . . . and they trying to tell me I done raped a Mexican girl." We note that this testimony immediately followed defendant's assertion that he had been doing drugs all night and did not mean to write that he had sex with K.N. ten times. Furthermore, defense counsel did not move to strike this testimony.

After hearing arguments on the matter, the trial court ruled that it was proper for the State to ask defendant questions about the forcible rape charges, with the caveat that "anything that [defendant] does not wish to discuss he has the right to take the Fifth Amendment sir, against self incrimination." Thereafter, the prosecutor's cross-examination of defendant was limited in scope to questions which sought to explain and rebut defendant's direct examination testimony. The trial court did not allow defendant to incriminate himself or even address the other charges against him. Instead, defendant was merely allowed to testify that, at the time of his statement, he was "in a spot . . . facing, one, two, three life sentences," testimony which seemed to explain defendant's state of mind at the time he wrote the statement and rebut defendant's prior testimony that he did not mean to write "10 times in a 2 month period."

Because the State's cross-examination did not go outside the scope of the evidence introduced by defendant, but instead explained and rebutted defendant's testimony, defendant lost the benefit of an objection to this testimony. Thus, the trial court did not abuse its discretion by allowing the State to cross-examine defendant regarding the unrelated charges. *See State v. Jennings*, 333 N.C. 579, 604, 430 S.E.2d 188, 200 (defendant cannot claim reversible error occurred

when he introduces the evidence which he claims is prejudicial or makes no objection when the evidence is brought in), *cert. denied*, 510 U.S. 1028, 126 L. Ed. 2d 602 (1993). We also note that defendant has failed to show a reasonable possibility that a different result would have been reached had this line of questioning been prohibited by the trial court. *See* N.C.G.S. § 15A-1443(c) (2007) ("A defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct.").

V.

**[5]** Finally, defendant assigns error to the sentence imposed by the trial court, arguing that the active sentence of two consecutive terms of 336-413 months constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments to the U.S. Constitution and article I, sections 19 and 27 of the North Carolina Constitution. As part of this argument, defendant contends that the sentence imposed by the trial court was "clearly excessive and disproportionate" to the crime of which defendant was convicted.

Our review of the record, however, reveals that defendant did not present this argument at trial. In the conference regarding jury instructions, defendant's counsel did state, "I think that this becomes in many ways an Eighth Amendment constitutional argument which of course is *premature at this time to raise.* But should the jury find him guilty and he is sentenced, I think that becomes an Eighth Amendment argument . . . ." (Emphasis added.) However, defendant did not object to the sentence on constitutional grounds, and the trial court thus did not rule on the issue. It is well-established that appellate courts ordinarily will not pass upon a constitutional question unless it was raised and passed upon in the court below. *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982); *State v. Dorsett*, 272 N.C. 227, 229, 158 S.E.2d 15, 17 (1967). Even assuming, *arguendo*, that defendant adequately preserved the issue for appeal, we have previously held that the sentencing scheme under N.C.G.S. § 14-27.7A, "reflects a rational legislative policy and is not disproportionate to the crime" and is therefore constitutional. *Clark*, 161 N.C. App. at 319, 588 S.E.2d at 67 (quoting *State v. Anthony*, 133 N.C. App. 573, 578, 516 S.E.2d 195, 198 (1999), *aff'd*, 351 N.C. 611, 528 S.E.2d 321 (2000)). This assignment of error is overruled.

No error.

Judges BRYANT and BEASLEY concur.