STATE OF NORTH CAROLINA v. GREGORY LEON CARTER

No. COA08-960

(Filed 21 July 2009)

**1. Appeal and Error— preservation of issues—failure to argue**

The ten assignments of error that defendant failed to raise in his brief are deemed abandoned under N.C. R. App. P. 28(b)(6).

**2. Rape— first-degree rape—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the three first-degree rape charges even though defendant contends the State presented insufficient evidence to establish every element of the offenses and to establish the identity of the perpetrator because giving the State the benefit of all reasonable inferences revealed that: (1) the combined testimony from victim and defendant provided substantial evidence for each essential element of first-degree rape such that a reasonable mind might accept as adequate to support a conclusion that defendant had vaginal intercourse with the victim, the victim was under thirteen years of age, defendant was at least twelve years of age, and defendant was at least four years older than the victim; and (2) testimony from the victim and defendant provided substantial evidence for each essential element of statutory rape as adequate to support a conclusion that throughout the relevant times, defendant had vaginal intercourse or performed sexual acts with the victim; the victim was thirteen, fourteen, and fifteen years of age; defendant was at least six years older than the victim; and defendant was not lawfully married to the victim. N.C.G.S. §§ 14-27.2(a), 14-27.7A(a).

**3. Indecent Liberties; Rape— multiple counts—continuous course of conduct theory not recognized in North Carolina**

The trial court did not err by denying defendant's motion to dismiss two of the three first-degree rape charges and one of the indecent liberties with a child charges on the grounds that the associated acts were in the nature of a continuous transaction rather than separate, distinct crimes because: (1) defendant failed to provide support for the argument that first-degree rape or statutory rape should be treated as a continuous offense and differently from forcible rape or incest; and (2) North Carolina law does not recognize the continuous course of conduct theory for rape.

**4. Evidence— uncorroborated testimony—sexual offenses**

The trial court did not err by denying defendant's motion to dismiss all charges including three for first-degree rape, two for indecent liberties with a child, and three for statutory rape even though defendant contends the State merely presented uncorroborated testimony of the victim because: (1) the unsupported testimony of the prosecutrix in a prosecution for rape has been held in many cases sufficient to require submission of the case to the jury; (2) the testimony of a single witness is adequate to withstand a motion to dismiss when that witness has testified to all the required elements of the crimes at issue; and (3) the victim testified as to all the required elements of the crimes at issue, and it is the duty of the jury to weigh a witness's credibility.

**5. Jury— failing to conduct jurors back into courtroom after jurors requested copies of written statements previously admitted into evidence—no showing of prejudice**

Although the trial court erred and violated N.C.G.S. § 15A-1233 in a multiple first-degree rape, indecent liberties with a child, and statutory rape case by failing to conduct the jurors back into the courtroom after the jurors requested copies of written statements previously admitted into evidence, it did not commit plain error because defendant failed to meet his burden of proof to show prejudice.

**6. Indecent Liberties— failure to require State to identify alleged acts—identifying acts in instructions—plain error analysis**

The trial court did not commit plain error by failing to require the State to identify the alleged acts forming the bases for the

STATE v. CARTER

[198 N.C. App. 297 (2009)]

indecent liberties charges and then identifying those acts as the bases for the charges in its instructions because: (1) our Supreme Court has held that when instructing on indecent liberties, the judge is under no requirement to specifically identify the acts that constitute the charge; and (2) a defendant may be unanimously convicted of indecent liberties even if the indictments lacked specific details to identify the specific incidents.

Appeal by defendant from judgments entered 21 February 2008 by Judge William C. Griffin, Jr. in Beaufort County Superior Court. Heard in the Court of Appeals 28 January 2009.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Chris Z. Sinha, for the State.*

*William D. Spence, for defendant-appellant.*

JACKSON, Judge.

On 4 June 2007, Gregory Leon Carter ("defendant") was indicted on three counts of first-degree rape, two counts of indecent liberties with a child, and three counts of statutory rape. All of the charged offenses involved defendant's step-daughter ("K.B.") and are alleged to have occurred on various dates from May 1996 until December 2000.

On 21 February 2008, a jury found defendant guilty on all charges. For the counts of first-degree rape and indecent liberties with a child, defendant was sentenced to 240 to 297 months imprisonment. For the counts of statutory rape, defendant was sentenced to 192 to 240 months imprisonment to run consecutively with the prior sentences. Defendant appeals from his convictions. For the reasons set forth below, we hold no error.

Defendant was born on 30 January 1969. K.B. was born on 28 December 1984. On 14 February 1992, K.B.'s mother, Sandra Carter ("Carter"), married defendant. At the time, K.B. lived with her maternal grandparents. In June or July of 1996, K.B. moved into a trailer on Shirley Farm Road in Beaufort County, North Carolina to live with defendant, Carter, and K.B.'s younger step-brother, Javon.

When K.B. began sixth grade in August 1996, Carter worked evenings, leaving Javon and K.B., then twelve years old, alone with defendant. Starting at that time, defendant established a pattern of sexual activity with K.B. that regularly occurred several times a week from August 1996 until December 2000.

Defendant first would talk to K.B. to gain her trust. He then would lead K.B. to her bedroom, where he would touch her on her breasts and between her legs through her clothing. Defendant would tell K.B. that he was preparing her for outside life. Then defendant would remove K.B.'s clothes, and touch her exposed breasts and between her exposed legs. He then would direct K.B. to cover her head. After K.B. covered her head, Defendant would put his penis inside her vagina and have intercourse with her. Initially, defendant pulled his penis out of K.B.'s vagina and ejaculated onto her stomach.

In December 1996, the family moved away from the Shirley Farm Road location and into a trailer on Free Union Church Road in Beaufort County. By the time the family moved, defendant had put his penis inside of K.B.'s vagina seven or eight times. K.B. knew that sexual activity with defendant was wrong, but she also knew defendant was the authority figure in the household. Defendant would punish K.B. with beatings by belt or switch if she disobeyed. Carter saw bruises on her daughter's back and buttocks from defendant's beatings. Defendant forbade K.B. to tell anyone about the sexual activity between the two of them, warning her that if she told anyone, he would hurt her grandparents. While the family lived on Free Union Church Road, defendant engaged in his pattern of sexual activity with K.B. twice a week. K.B. was thirteen years old.

The family again moved in April or May of 1997, onto a two-lane section of Highway 264 in Beaufort County. At the new trailer, defendant continued his pattern of sexual touching and intercourse with his step-daughter. Defendant would send K.B. to her room "for what was going to follow," two or three times a week, throughout the following year.

Only when K.B. was menstruating would defendant refrain from engaging in sexual activity with her. Defendant began to make K.B. keep track of her menstrual cycle, marking her period on a calendar.

Early in 1999, K.B. was fourteen years old and living at the Highway 264 address when defendant's pattern of sexual intercourse with her changed; defendant ceased withdrawing his penis from K.B.'s vagina during intercourse. Still early in 1999, upon learning that K.B. had missed her menstrual cycle, defendant had her take a pregnancy test. The test revealed that K.B. was pregnant. At that time, K.B. had never had sex with anyone other than with defendant. K.B. heard defendant tell Carter about the pregnancy, whereupon Carter

screamed. Defendant admitted to her that he was the father, claiming he had sex with K.B. only once. Defendant told Carter that they would have to arrange an abortion. Apart from overhearing defendant and Carter, K.B. was not involved in discussions regarding the pregnancy. Defendant directed K.B. to have an abortion. Defendant told K.B. that no one could know about the pregnancy.

In May of 1999, defendant and Carter took K.B. to a clinic named "A Woman's Choice" in Raleigh, North Carolina. Defendant filled out the paperwork, so K.B. never knew what name he used to register her at the clinic. K.B. had an abortion. Back at home, defendant made his step-daughter write a note to Carter, accepting blame for the pregnancy. K.B. began exhibiting behavioral issues at school, ultimately failing ninth grade.

After the abortion, defendant resumed his pattern of sexual gratification and intercourse with K.B. On 28 December 1999, K.B. turned fifteen years old. Defendant continued to put his penis inside her vagina and have intercourse with her.

In August 2000, the family moved from Beaufort County to Martin County, North Carolina. In 2004, defendant and Carter separated over defendant's affair with another woman. Defendant left the home of Carter, K.B., and Javon. The divorce was finalized in January 2006.

Notwithstanding defendant's departure, K.B. continued to experience emotional issues related to the abortion and defendant's sexual activities with her. In 2007, K.B. spoke with her pastor regarding her experiences with defendant. Based upon advice from the pastor, she contacted law enforcement. On 31 January 2007, K.B. went to the Beaufort County Sherriff's Office, where she gave a statement to Investigator Dwight Williams ("Williams") about defendant's sexual touching and sexual intercourse with her. On 1 February 2007, K.B. continued her statement to Williams. Carter also gave a statement to Williams that day. Carter confirmed that she had seen the positive pregnancy test, and she heard defendant tell her that he was the father.

On 28 February 2007, defendant voluntarily came in to the Sherriff's Office, at Williams' request. After Williams told defendant that he was not under arrest, Williams asked defendant if he would discuss an incident that reportedly had taken place between defendant and K.B. Defendant acted unsurprised, replying that the incident had been so long ago that nothing could be done about it anyway.

STATE v. CARTER

[198 N.C. App. 297 (2009)]

In his statement to Williams, defendant admitted first having sexual intercourse with K.B. in her bedroom in 1996, after she teased him by wearing very little clothing, showing him her breasts or buttocks, and putting something into his drink to make him have sex with her. Defendant reported having sex with K.B. three weeks later. When defendant found out K.B. was pregnant, he stated that he told Carter he would turn himself into law enforcement, but that Carter told him she did not want anyone to know about the pregnancy. Defendant told Williams that defendant and Carter took K.B. to Raleigh for an abortion in May 1997. Defendant reported that he and Carter separated in 2002.

After recording defendant's statement, Williams read the statement back to defendant, whereupon defendant corrected a misspelled word on page two. Defendant then signed both pages of his statement and left. On 1 March 2007, Williams obtained a warrant for defendant's arrest, which was served by a deputy in the Beaufort County Sheriff's Office.

At trial, defendant denied ever assaulting, touching inappropriately, or having sexual intercourse with K.B. He denied ever beating K.B. with a belt or switch. Defendant denied that any statutory rape occurred, and he denied telling Williams that defendant and Carter took K.B. to Raleigh for an abortion. He denied that Williams ever read defendant's statement back to him. Additionally, defendant testified that he did not understand from Williams' questions that K.B. accused defendant of having sex and impregnating her. Defendant stated in court that Williams' must have made up portions of defendant's statement in which defendant admitted having sex with K.B. Nevertheless, defendant testified that he did understand why he was in court and the charges he was facing.

[1] Initially, we note that defendant raised thirty assignments of error on appeal. Of those, defendant brought forward only twenty assignments of error in his brief. Pursuant to the North Carolina Rules of Appellate Procedure, the remaining ten assignments of error are deemed abandoned. See N.C. R. App. P. 28(b)(6) (2007).

[2] In defendant's first six assignments of error, he argues that the trial court erred in denying his motion to dismiss the first-degree rape charges because the State presented insufficient evidence to establish every element of the offenses and to establish the identity of the perpetrator. We disagree.

"The standard of review for a motion to dismiss in a criminal trial is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense." *State v. Norman*, 196 N.C. App. 779, 785, 675 S.E.2d 395, 400 (2009) (citations omitted) (internal quotations omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *State v. Kraus*, 147 N.C. App. 766, 769, 557 S.E.2d 144, 147 (2001)) (citations omitted) (internal quotation marks omitted). "In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *Id.* (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993) (citations omitted) (internal quotations omitted)). "Contradictions and discrepancies do not warrant dismissal of the case—they are for the jury to resolve." *State v. Cortes-Serrano*, 195 N.C. App. 644, 652, 673 S.E.2d 756, 761 (quoting *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992) (citations omitted) (internal quotations omitted)), *disc. rev. denied*, 363 N.C. 376, 679 S.E.2d 138 (2009).

To prove first-degree rape, pursuant to section 14-27.2(a)(1) of the North Carolina General Statutes, the State must show (1) defendant had vaginal intercourse with the victim, (2) the victim was under thirteen years of age, (3) defendant was at least twelve years of age, and (4) defendant was at least four years older than the victim. N.C. Gen. Stat. § 14-27.2(a)(1) (2007).

To prove defendant guilty of the statutory rape of a person thirteen, fourteen, or fifteen years old, pursuant to section 14-27.7A(a) of the North Carolina General Statutes, the State must show (1) defendant engaged in vaginal intercourse or a sexual act with victim, (2) the victim was thirteen, fourteen, or fifteen years of age, (3) defendant was at least six years older than the victim, and (4) defendant was not lawfully married to the victim. N.C. Gen. Stat. § 14-27.7A(a) (2007).

Defendant contends that the State presented evidence that was both contradictory and insufficient to prove specific dates where defendant engaged in vaginal intercourse with K.B., whether the defendant penetrated K.B.'s vagina with his penis, and whether K.B. saw defendant engage in vaginal intercourse with her. We disagree.

At trial, K.B. testified that her birth date was 28 December 1984 and that in August of 1996, when K.B. was between twelve and

thirteen years of age, she started sixth grade. K.B. stated specifically that in August 1996, defendant first engaged in sexual activity with her. K.B. testified that defendant touched her in inappropriate places, removed her clothing, then directed her to cover her head so that defendant could not be seen. After covering her head as directed, she felt defendant push his penis inside her vagina, then move up and down, eventually ejaculating onto her stomach. K.B. testified that defendant put his penis inside of her seven or eight times from August 1996 through November 1996, and two or more times each week from December 1996 through March 1997, and from April 1997 through December 1997. K.B. further testified that defendant had sex with her two or three times a week during 1997 and 1998, while she was thirteen. Additionally, K.B. stated that defendant stopped pulling out of her vagina to ejaculate onto her stomach, and impregnated her in February or March of 1999, when she was fourteen years old. K.B. further testified that from the time of her abortion in 1999 to the time her family moved outside of Beaufort County in 2000, defendant had sex with her both before and after she turned fifteen.

During trial, K.B. used both specific and general terms in her testimony to represent the act of defendant inserting his penis into her, including: "he put his private part inside of me," "put his penis inside of me," "molestation," "having sex," and "his penis felt like a hard stick going inside me[.]" Further, defendant testified at trial that his birth date was 30 January 1969. Defendant testified at trial that he married Carter on 14 February 1992 and remained married until at least 12 November 2004.

Giving the State the benefit of all reasonable inferences, the combined testimony from victim and defendant provides substantial evidence for each essential element of first-degree rape such that a reasonable mind might accept as adequate to support a conclusion that (1) defendant had vaginal intercourse with victim, (2) the victim was under thirteen years of age, (3) defendant was at least twelve years of age, and (4) defendant was at least four years older than the victim. *See* N.C. Gen. Stat. § 14-27.2(a) (2007). Additionally, giving the State the benefit of all reasonable inferences, testimony from the victim and defendant provides substantial evidence for each essential element of statutory rape as adequate to support a conclusion that throughout the relevant times, (1) defendant had vaginal intercourse or performed sexual acts with victim, (2) the victim was thirteen, fourteen, and fifteen years of age, (3) defendant was at least six years older than the victim, and (4) defendant was not lawfully married to

the victim. *See* N.C. Gen. Stat. § 14-27.7A(a) (2007). Therefore, as the State provided substantial evidence for each essential element of both first-degree rape and statutory rape of the victim, and for the proposition that defendant was the perpetrator, the trial court was correct in denying defendant's motion to dismiss on the ground of insufficient evidence. *See Norman*, 196 N.C. App. at 785, 675 S.E.2d at 400.

**[3]** In assignments of error numbered 9 through 11, defendant argues that the trial court erred in denying his motion to dismiss two of the three first-degree rape charges, two of the three statutory rape charges, and one of the indecent liberties with a child charges, on the grounds that the associated acts were in the nature of a continuous transaction rather than separate, distinct crimes. We disagree.

Defendant attempts to distinguish prior cases from the facts here by contending that the instant case does not involve a forcible rape or incest charge, yet defendant fails to provide support for the argument that first-degree rape or statutory rape should be treated as a continuous offense and differently from forcible rape or incest.

Furthermore, we have previously noted that North Carolina law does not recognize the "continuous course of conduct" theory:

> In *State v. Dudley*, 319 N.C. 656, 659, 356 S.E.2d 361, 363 (1987), the Supreme Court cited with approval language from *State v. Small*, 31 N.C. App. 556, 230 S.E.2d 425 (1977): 'Generally rape is not a continuous offense, but each act of intercourse constitutes a distinct and separate offense.' The General Assembly has criminalized each act of statutory rape, not a course of conduct. Any changes in the manner in which a course of criminal conduct is punished must come from the legislative branch and not from the judicial branch."

*Cortes-Serrano*, 196 N.C. App. at 654, 673 S.E.2d at 762 (quoting *State v. Bullock*, 178 N.C. App. 460, 473, 631 S.E.2d 868, 877 (2006)). As such, defendant's argument is without merit and these assignments of error are overruled.

**[4]** In assignments of error numbered 20 through 27, defendant argues that the trial court erred in denying his motion to dismiss all charges because the State presented the uncorroborated testimony of K.B.—evidence insufficient to carry any of the charges to the jury or to support the verdicts. We disagree.

"The unsupported testimony of the prosecutrix in a prosecution for rape has been held in many cases sufficient to require submission of the case to the jury." *State v. Bailey*, 36 N.C. App. 728, 730, 245 S.E.2d 97, 99 (1978). *See State v. Hines*, 286 N.C. 377, 211 S.E.2d 201 (1975); *State v. Shaw*, 284 N.C. 366, 200 S.E.2d 585 (1973); *State v. Carthens*, 284 N.C. 111, 199 S.E.2d 456 (1973); *State v. Miller*, 268 N.C. 532, 151 S.E.2d 47 (1966); *State v. Raye*, 73 N.C. App. 273, 326 S.E.2d 333 (1985), *disc. rev. denied*, 313 N.C. 609, 332 S.E.2d 183 (1985), *State v. Williams*, 31 N.C. App. 588, 229 S.E.2d 839 (1976). "It is equally well-settled that the testimony of a single witness is adequate to withstand a motion to dismiss when that witness has testified to all the required elements of the crimes at issue." *State v. Whitman*, 179 N.C. App. 657, 670, 635 S.E.2d 906, 914 (2006) (citing *State v. Lester*, 294 N.C. 220, 225-26, 240 S.E.2d 391, 396 (1978) ("The unsupported testimony of an accomplice, if believed, is sufficient to support a conviction.")). Because K.B. testified as to all the required elements of the crimes at issue, and because the duty of the jury is to weigh a witness' credibility, the trial court properly denied defendant's motion to dismiss.

[5] In assignment of error number 28, defendant argues that the trial court committed plain error and violated section 15A-1233 of the North Carolina General Statutes by failing to conduct the jurors back into the courtroom after the jurors requested copies of written statements previously admitted into evidence. We agree, but we hold no prejudice resulted from the violation.

Section 15A-1233(a) of the North Carolina General Statutes requires that, "[i]f the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom." N.C. Gen. Stat. § 15A-1233(a) (2007). In the instant case, the trial court allowed the jury to take previously admitted evidence into the jury room during deliberations. Defendant did not object during trial to the judge sending the information to the jurors; nevertheless, defendant is not precluded from raising the issue on appeal. *See State v. Ashe*, 314 N.C. 28, 40, 331 S.E.2d 652, 659 (1985). Because defendant failed to object during trial, the plain error standard of review applies. *See State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). Plain error exists when the trial court has committed a " '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done' " or "which amounts to a denial of a fundamental right of the accused," or has " 'resulted in a miscarriage of justice or in the denial to appellant of a

**STATE v. CARTER**

[198 N.C. App. 297 (2009)]

fair trial[.]' " *Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.) (emphasis in original) (footnote call numbers omitted), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)).

Under the plain error standard, "[i]n order to be entitled to a new trial, defendant must demonstrate that there is a reasonable possibility that a different result would have been reached had the trial court's error not occurred." *State v. Nobles*, 350 N.C. 483, 506, 515 S.E.2d 885, 899 (1999) (citing *State v. McLaughlin*, 320 N.C. 564, 570, 359 S.E.2d 768, 772 (1987)). In his brief, defendant relied upon *Ashe*, 314 N.C. at 34, 331 S.E.2d at 656, and *State v. Helms*, 93 N.C. App. 394, 400, 378 S.E.2d 237, 240 (1989), for support. The cases cited for support are inapposite. Both cases cited involved the failure to exercise judicial discretion to determine whether the jury could review evidence during deliberations. In the instant case, a different issue exists.

Here, unlike the issues presented in *Ashe* and *Helms*, the trial court exercised judicial discretion in sending requested information to the jury. However, before sending that information, the trial court here offered the prosecutor and defense counsel an opportunity to object to the decision. Notwithstanding the opportunity expressly offered by the court, defendant failed to object. When the information was sent to the jury, the record shows the trial court, the prosecutor, and defendant in agreement as to the decision. Defendant provides no support for the contention that the violation of section 15A-1233 resulted in prejudice. Therefore, because defendant failed to meet his burden of proof by not demonstrating prejudice as a result of the trial court's neglecting to follow section 15A-1233 of the North Carolina General Statutes, this assignment of error is overruled.

[6] In assignments of error numbered 29 and 30, defendant argues that the trial court committed plain error in not requiring the State to identify the alleged acts that formed the basis of the indecent liberties charges and in subsequently identifying and using those acts a basis in the jury instructions. We disagree.

Defendant failed to object during trial to the trial court's failure to require the State to identify the alleged acts forming the bases for the indecent liberties charges. Defendant, however, failed to object during trial when those alleged acts were identified as the bases for the charges in the trial court's instructions. Because defendant failed to object during trial, the plain error standard applies. *See Odom*, 307 N.C. at 660, 300 S.E.2d at 378.

STATE v. CARTER

[198 N.C. App. 297 (2009)]

Defendant contends that the trial court must require the State to identify clearly to the jury the acts presented during trial that form the bases for the indecent liberties charges. Notwithstanding defendant's contention, our Supreme Court recently held in *State v. Smith*, 362 N.C. 583, 669 S.E.2d 299 (2008), that "[w]hen instructing on indecent liberties, the judge is under no requirement to specifically identify the acts that constitute the charge." *Smith*, 362 N.C. at 596-97, 669 S.E.2d at 308 (citing *State v. Hartness*, 326 N.C. 561, 563-67, 391 S.E.2d 177, 178-81 (1990)). Further, "a defendant may be unanimously convicted of indecent liberties even if . . . the indictments lacked specific details to identify the specific incidents." *State v. Lawrence*, 360 N.C. 368, 375, 627 S.E.2d 609, 613 (2006) (citing *Hartness*, 326 N.C. at 564, 391 S.E.2d at 179; *State v. Lyons*, 330 N.C. 298, 412 S.E.2d 308 (1991)). Therefore, because defendant may be convicted of an indecent liberties charge even when the indictment lacks details identifying specific incidents, and because the judge is under no requirement to identify specifically the acts that constitute the charge, the trial court did not commit plain error by not requiring the State to identify the alleged acts forming the bases for the indecent liberties charges and then identifying those acts as the bases for the charges in its instructions.

For the foregoing reasons, we hold no error in the trial court's actions.

No error.

Judges McGEE and HUNTER, Jr., Robert N. concur.