An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1047

NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

STATE OF NORTH CAROLINA

    v.

JOSE SANTOS LOPEZ-PESINA

Martin County
Nos. 10 CRS 605-610
      10 CRS 50633

Appeal by defendant from judgment entered 2 April 2013 by Judge W. Russell Duke, Jr. in Martin County Superior Court. Heard in the Court of Appeals 5 March 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Nancy A. Vecchia, for the State.*

> *Glover & Petersen, P.A., by Ann B. Petersen, for defendant.*

HUNTER, Robert C., Judge.

Defendant appeals the judgment entered against him after a jury found him guilty of seven counts of first degree statutory rape.[1]  On appeal, defendant argues that: (1) the trial court

---

[1] We note that both parties stated that defendant was convicted of "first degree rape of a child" in their briefs.  However, defendant was indicted for and convicted of violating N.C. Gen. Stat. § 14-27.2(a)(1), first degree statutory rape, not N.C. Gen. Stat. § 14-27.2A(a), rape of a child.  *See generally, State*

erred in denying his motion to dismiss for insufficiency of the evidence because the evidence only supported six charges of first degree statutory rape; and (2) the trial court erred by allowing the State to amend the seven indictments charging first degree statutory rape during trial.

After careful review, we find no error.

**Background**

Defendant presented no evidence at trial. The State's evidence tended to establish the following: M.A., the alleged victim, was born 5 June 1995. M.A.'s mother, A.T.[2], married defendant when M.A. was five years old. Defendant moved into the house where M.A. lived with A.T. and M.A.'s grandmother. A.T. and defendant had a child in 2004. At some point subsequent, A.T. and defendant separated, and defendant moved out of the house.

In 2009, when M.A. was 13 or 14 years old, A.T. began talking about getting back together with defendant. At this point, M.A. claimed that she had been sexually abused by

_v. Agustin_, 747 S.E.2d 316, 320 (noting that "N.C. Gen. Stat. § 14-27.2A provides that first-degree statutory rape (N.C. Gen. Stat. § 14-27.2(a)(1)) is a lesser included offense of rape of a child"), _disc. review denied_, __ N.C. __, 749 S.E.2d 864 (2013).

[2] To protect the identity of the minor victim, for purposes of this opinion, we have used initials for both the victim and her family members.

defendant, beginning when she was five or six years old. She claimed that the abuse stopped when she was in the fourth or fifth grade.

At trial, M.A. was able to provide specific testimony about three separate incidents of alleged abuse. M.A. testified that the first incident of abuse that she could remember happened after defendant and her mother were married; however, she was unable to provide any date with certainty. She and defendant were alone in the house. Defendant laid underneath a blanket with her on the living room floor and began touching her "in uncomfortable areas." She claimed that: defendant "stuck the tip of his penis on the outer part of my privates, and, after he was finished, I remembered that I had [sic] ran to the bathroom and it hurt when I used the bathroom." During this incident, M.A. alleged that defendant's penis remained on the outer parts of her vagina. Defendant also "rubbed the inside of [her] thighs and put two fingers inside [her] vagina."

Next, M.A. claimed that the second incident occurred after she had watched a pornographic video she found in her mother's VCR. M.A. testified that:

> It happened in the room again, and he was
> laying down and he had me on top. His penis
> wasn't all the way inside of me, but a small
> amount of penis was, and I had remembered

making that sound that I heard on that video, and then, once again, when he was finished, I had [sic] got up and went to the bathroom and it hurt when I used the bathroom.

During a third incident, when she was five or six years old, M.A. claimed that defendant came "into the bathroom [while M.A. was in the bathtub] and [pulled] his shorts down and pull[ed] his penis out and he [stuck] it in my face and he start[ed] rubbing the skin of it back and forth." Defendant told her to touch it. Eventually, defendant ejaculated.

Then, at trial, the following colloquy took place:

[THE STATE:] Did the defendant put his penis inside your vagina any other time than what you've testified to already?

[M.A.:] Yes.

[THE STATE:] Do you know how many times?

[M.A.:] No.

[THE STATE:] Do you know if it was more than five times?

[M.A.:] Yes.

[THE STATE:] Do you know if it was more than ten times?

[M.A.:] Not exactly.

[THE STATE:] Was it somewhere between five and ten?

[M.A.:] Yes.

Ann Parson ("Ms. Parson"), a pediatric nurse with the Tedi Bear Center ("the Center"), a facility charged with assisting children and families where there are concerns of possible abuse or neglect, testified as an expert in the field of pediatric nursing on behalf of the State. On 29 September 2009, she examined M.A. at the Center after M.A. was referred by the Department of Social Services and law enforcement. At the time, M.A. was fourteen years old. Although Ms. Parson testified that M.A.'s genital area was completely "normal" for someone her age—meaning that she did not see any physical signs of sexual abuse—this finding did not necessarily mean that M.A. had not been sexually abused given that the alleged abuse had occurred years before.

Mary Curry ("Ms. Curry"), a forensic interviewer at the Center, also testified for the State. In September 2009, she conducted a forensic interview with M.A. During this interview, M.A. told Ms. Curry that defendant had molested her from the time when she was four until she turned eleven years old. M.A. alleged that, during the course of the abuse, defendant put his penis in her mouth and her vagina. M.A. contended that the incidents of abuse happened more than once. Ms. Curry testified that M.A. gave her specific details on different incidents; M.A.

reported that some incidents happened in Florida while others occurred in Martin County. With regards to M.A.'s inability to name specific incidents or remember when they occurred, Ms. Curry stated that:

> Time for children is really difficult. I think time for anybody going back that long in time is really hard. A lot of times, we don't talk about time with kids until they're older, teenagers like she was, but when kids talk about incidents that's been chronic abuse type allegations, it can be really difficult to give specific details because it might be happening on a daily basis or a weekly basis.

Ms. Curry also noted that it is "normal" for child victims to wait years before reporting sexual abuse.

On 20 September 2010, the grand jury returned seven indictments against defendant for first degree statutory rape. The date of the offenses were: (1) 5 June 1999 to 4 June 2000 (10 CRS 50633); (2) 5 June 2000 to 4 June 2001 (10 CRS 605); (3) 5 June 2001 to 4 June 2002 (10 CRS 606); (4) 5 June 2002 to 4 June 2003 (10 CRS 607); (5) 5 June 2003 to 4 June 2004 (10 CRS 608); (6) 5 June 2004 to 4 June 2005 (10 CRS 609); and (7) 5 June 2005 to 4 June 2006 (10 CRS 610). The dates of the alleged offenses covered the time when M.A. was four years old until she was ten. Defendant's trial began 1 April 2013.

At the end of the State's presentation of evidence, the State made a motion to amend all seven indictments to "support the evidence at trial." Specifically, the State sought to amend the indictment in 10 CRS 50633 to expand the date of offense from 5 June 2000 to 4 June 2002 (originally, it was 5 June 1999 to 4 June 2000). The State contended that this date period would cover the time when M.A. was five to six years old. With regard to the indictment in 10 CRS 605, the State sought to also amend it to 5 June 2000 to 4 June 2002 (originally, it was 5 June 2000 to 4 June 2001). Finally, the State sought to amend the dates of the alleged offenses for all other charges to 5 June 2000 to 4 June 2005, a period that would cover when M.A. was between five and ten years old. The trial court allowed the State's motion to amend as to all the indictments, concluding that "dates are not necessarily a substantial change to the indictment in these particular kinds of cases." On 2 April 2013, the jury found defendant guilty on all seven counts of first degree statutory rape. After determining that defendant had six prior record points, the trial court sentenced defendant to 336 months to 413 months imprisonment. Defendant timely appealed.

**Arguments**

Defendant first argues that the trial court erred in denying his motion to dismiss for insufficiency of the evidence. Specifically, defendant contends that, even taken in the light most favorable to the State, the evidence only supported six charges of first degree statutory rape. Therefore, the trial court should have dismissed the charge in 10 CRS 50633 because M.A. testified that the first act of rape occurred when she was six to seven years old; the dates of offense in 10 CRS 50633 cover the time period when M.A. was five to six years old. We disagree.

"This Court reviews the trial court's denial of a motion to dismiss de novo." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455, *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000).

Defendant was convicted of seven counts of first degree statutory rape under N.C. Gen. Stat. § 14-27.2(a)(1). Under

this statute, the State must prove that defendant "engage[d] in vaginal intercourse . . . [w]ith a victim who is a child under the age of 13 years and [] defendant is at least 12 years old and is at least four years older than the victim." N.C. Gen. Stat. § 14-27.2(a)(1) (2012).

Defendant only contends on appeal that there was sufficient evidence that he engaged in vaginal intercourse with M.A. six times; thus, the trial court should have dismissed one of the counts. Defendant's argument is without merit.

"Generally, a jury may find a defendant guilty of an offense based solely on the testimony of one witness." *State v. Combs*, __ N.C. App. __, __, 739 S.E.2d 584, 586, *disc. review denied*, __ N.C. __, 743 S.E.2d 220 (2013). "The unsupported testimony of the prosecutrix in a prosecution for rape has been held in many cases sufficient to require submission of the case to the jury." *State v. Carter*, 198 N.C. App. 297, 306, 679 S.E.2d 457, 462 (2009). Taking the evidence in a light most favorable to the State, M.A. testified that, during the second incident of sexual abuse that she provided specific details about at trial, defendant put a small amount of his penis in her vagina, which constituted vaginal intercourse. *See State v. Combs*, __ N.C. App. __, __, 739 S.E.2d 584, 586 ("Vaginal

intercourse is defined as penetration, however slight, of the female sex organ by the male sex organ.") (internal quotation marks omitted), *disc. review denied*, __ N.C. __, 743 S.E.2d 220 (2013). Furthermore, when the State asked whether she could remember how many times defendant put his penis in her in addition to the times she had already testified to, she claimed she could not remember exactly how many times but agreed it was "more than five times" but less than ten. Therefore, in addition to the one incident she described in detail, M.A. contended that defendant put his penis inside her vagina, at a minimum, six other times. Consequently, M.A.'s own testimony constituted substantial evidence of seven incidents of rape. Therefore, her testimony was sufficient to withstand defendant's motion to dismiss, and the trial court did not err in denying it.

Next, defendant argues that the trial court erred in allowing the State to amend the indictments at trial; however, defendant is only challenging the amendments made in 10 CRS 50633 and 605. Specifically, defendant contends that these changes "fundamentally changed the nature of the charges returned by the grand jury," and they "prejudiced the defendant's ability to defend against two of the charges."

Therefore, according to defendant, the charges in 10 CRS 50633 and 605 should be vacated because there was no evidence that defendant committed these acts when M.A. was four or five years old, the time period alleged in the original indictments.

"Generally, when time is not of the essence of the offense charged, an indictment may not be quashed for failure to allege the specific date on which the crime was committed." *State v. Price*, 310 N.C. 596, 599, 313 S.E.2d 556, 559 (1984). A variance as to time, however, may be "of essence" if "it deprives a defendant of an opportunity to adequately present his defense. *Id*. "When time is not an essential element of the crime, an amendment in the indictment relating to the date of the offense is permissible since the amendment would not substantially alter the charge set forth in the indictment." *State v. Whitman*, 179 N.C. App. 657, 665, 635 S.E.2d 906, 911 (2006); *see also* N.C. Gen. Stat. § 15A-924(a)(4) (2013) ("Error as to a date or its omission is not ground for . . . reversal of a conviction if time was not of the essence with respect to the charge and the error or omission did not mislead the defendant to his prejudice.").

The issue is whether the date of offenses is an essential element of the crime of first degree statutory rape. The

amendments to 10 CRS 50633 and 605 expanded the time period of the alleged offenses to between 5 June 2000 and 4 June 2002, when M.A. was five or six years old. Under N.C. Gen. Stat. § 14-27.2(a)(1), the State was required to prove that defendant engaged in vaginal intercourse with M.A. when she was under the age of thirteen and defendant was at least twelve years old and four years older than M.A. Therefore, time was essential to the crime only to the extent that the State must prove that M.A. was less than thirteen at the time of the alleged offenses. M.A. would have been four or five years old under the original indictments and five or six years old under the amended indictments. Thus, under either version of the indictments, time was not of the essence to the State's case and the amendments did not, therefore, substantially alter the charge set forth in the original indictments.

Furthermore, defendant cannot claim prejudice when the time period set out in the amended indictments, 5 June 2000 to 4 June 2002, had already been covered in the other indictments for first degree statutory rape. In other words, defendant would already be on notice that the State would be seeking to prosecute him for alleged incidents that occurred when M.A. was five or six years old based on the other indictments returned by

the grand jury.  Accordingly, the trial court did not err in allowing the amendment of the indictments in 10 CRS 50633 and 605.

### Conclusion

Based on the foregoing reasons, defendant's trial was free from error.


NO ERROR.

Judges GEER and McCULLOUGH concur.

Report per Rule 30(e).