NO. COA14-133

 NORTH CAROLINA COURT OF APPEALS

 Filed: 4 November 2014

STATE OF NORTH CAROLINA

 v. Henderson County
 Nos. 11 CRS 55726-31
CHARLES STEVENS BLOW, JR.

 Appeal by defendant from judgments entered 31 July 2013 by

Judge Mark E. Powell in Henderson County Superior Court. Heard

in the Court of Appeals 11 August 2014.

 Attorney General Roy Cooper, by Associate Attorney General
 Christina E. Simpson, for the State.

 Paul F. Herzog for defendant-appellant.

 HUNTER, Robert C., Judge.

 Charles Stevens Blow, Jr. (“defendant”) appeals from six

judgments entered 31 July 2013 after a jury convicted him on

three counts each of first degree rape and first degree sex

offense on a child. On appeal, defendant contends that the

trial court erred by: (1) denying his motion to dismiss with

respect to one count of first degree rape and (2) denying his

motion to continue when defense counsel learned of a potential

defense witness on the eve of trial.
 -2-
 After careful review, we vacate one judgment for first

degree rape, but we find no error in the denial of defendant’s

motion to continue.

 Background

 Defendant is the biological father of M.B.1 and her sister,

C.B. M.B. was born in 2001 and was eleven years old when this

case went to trial. Defendant and Angela Blow (“Angela”), the

mother of M.B. and C.B., married in 2005. In August 2010,

Angela and defendant separated and Angela moved to Michigan with

M.B. and C.B. While in Michigan, Angela suffered a breakdown

and left M.B. and C.B. with her brother. As a result,

psychological and medical evaluations were performed on M.B.,

C.B., Angela, and defendant in April 2011 in the process of

determining placement of custody for the children. During these

evaluations, M.B. denied the occurrence of any previous abuse

when her family lived in North Carolina. Pursuant to an

agreement between Angela and defendant, M.B. and C.B. moved to

North Carolina to live with defendant and his new girlfriend in

June 2011.

 While visiting her mother in Michigan on 23 December 2011,

M.B. was being teased by other children in the family when she

1
 A pseudonym will be used to protect the privacy and identity of
the minor and her minor sibling.
 -3-
became upset and retreated to the bathroom. When Angela went in

to check on her, M.B. revealed to Angela that “[s]ometimes dad

takes his boy parts and he touches my girl parts.” M.B. then

said, “[defendant] told me that if I did not let him do it to

me, that now that [C.B.] was getting older he was going to do it

to her.” M.B. told Angela, and later testified at trial, that

this abuse had been occurring since she was about six years old.

The next morning, Angela took M.B. to the local hospital for an

examination.

 At the hospital, M.B. was questioned by Trooper Ruth

Osborne (“Trooper Osborne”) of the Michigan State Police. M.B.

told Trooper Osborne that defendant would put “his boy parts”

“on [M.B.’s] girl parts.” When asked for clarification, M.B.

later stated to Trooper Osborne that defendant would put his

“boy parts” inside her. M.B. stated during the interview that

defendant would touch her on her private parts with his hand,

his “boy part,” and his electric toothbrush. A sexual assault

examination was performed on M.B. during this hospital visit,

however the prosecution was not able to present this evidence

because the swabs were accidentally thrown away before being

examined by the North Carolina State Bureau of Investigation.
 -4-
 The Michigan State Police contacted Detective Dottie Parker

(“Detective Parker”) of the Henderson County Sheriff’s Office,

and a North Carolina investigation began. Defendant consented

to an interview with Detective Parker on 28 December 2011.

During this interview, defendant admitted that he had rubbed his

penis on M.B.’s vagina, performed oral sex on M.B., and put a

vibrating toothbrush on her vagina. However, defendant

repeatedly denied ever “penetrating” M.B. with either his

finger, toothbrush, or penis.

 Defendant was arrested following the interview. He was

indicted on 26 March 2012 on three counts of first degree rape,

alleged to have occurred between June 2011 and December 2011,

and three counts of first degree sex offense, alleged to have

occurred between June 2007 and June 2010.

 The defense made a pretrial motion to continue on the eve

of trial, claiming that defense counsel had learned of the

psychological evaluations completed on defendant, Angela, and

M.B. the day before trial was scheduled to begin. During the

motion hearing, the defense asserted that the relevance in these

evaluations lay in (1) the impeachment of M.B. through purported

prior inconsistent statements, and (2) the psychological

profiles of M.B. and defendant. The motion was denied.
 -5-
 At trial, M.B. testified that during the time period when

she and C.B. lived with defendant and his girlfriend from June

to December 2011, defendant would oftentimes come into the small

bedroom M.B. shared with C.B. and would touch M.B. on her

“private parts” and chest. M.B. stated that this happened “a

lot,” not just once or twice. M.B. testified that defendant

performed oral sex on her “a lot,” sometimes taking her into his

bedroom to perform these acts. M.B. also stated that defendant

placed his fingers and electric toothbrush inside her vagina “a

couple times.” M.B. further testified that defendant put his

penis in her vagina “a couple times.” M.B. did not remember

exactly how many times defendant put his penis inside her, but

she testified that it happened “more than one time.” M.B.

testified that she did not tell anyone about this abuse

initially because she was afraid “[defendant] would hurt me.”

 Defendant presented no evidence, but moved to dismiss all

charges at the close of the State’s evidence and renewed the

motion before the case was submitted to the jury. Defendant

argued in part that one of the charges for first degree rape

should be dismissed because the only evidence presented by the

State to support those charges was M.B.’s testimony that

defendant inserted his penis into her vagina “a couple” times.
 -6-
Both motions were denied. The jury convicted defendant of all

charges. Defendant was sentenced to 221 to 275 months

imprisonment for each of the three charges of first degree rape

and one count of first degree sex offense, all of which are to

be served concurrently. He was also sentenced to 221 to 275

months imprisonment for the remaining two counts of first degree

sex offense, which are to be served consecutively. Thus, in

total, defendant was sentenced to 663 to 825 months of active

imprisonment.

 Discussion

 I. Motion to Dismiss

 Defendant first argues that the trial court erred when it

denied defendant’s motion to dismiss with respect to one count

of first degree rape. We agree.

 “This Court reviews the trial court’s denial of a motion to

dismiss de novo.” State v. Smith, 186 N.C. App. 57, 62, 650

S.E.2d 29, 33 (2007). To defeat a motion to dismiss, the State

must present “substantial evidence (1) of each essential element

of the offense charged, or of a lesser offense included therein,

and (2) of defendant’s being the perpetrator of such offense.”

State v. Fritsch, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000)

(citations omitted). “Substantial evidence is such relevant
 -7-
evidence as a reasonable mind might accept as adequate to

support a conclusion.” State v. Denny, 361 N.C. 662, 664-665,

652 S.E.2d 212, 213 (2007) (quotation marks omitted).

“Generally, a jury may find a defendant guilty of an offense

based solely on the testimony of one witness.” State v. Combs,

__ N.C. App. __, __, 739 S.E.2d 584, 586, disc. review denied,

__ N.C. __, 743 S.E.2d 220 (2013).

 In considering a motion to dismiss, the trial court must

look at the evidence in the light most favorable to the State,

and the State is entitled to every reasonable inference drawn

from that evidence. Denny, 361 N.C. at 665, 652 S.E.2d at 213.

However, if the evidence is “sufficient only to raise a

suspicion or conjecture as to either the commission of the

offense or the identity of the defendant as the perpetrator, the

motion to dismiss must be allowed.” State v. Malloy, 309 N.C.

176, 179, 305 S.E.2d 718, 720 (1983).

 “A person is guilty of rape in the first degree if the

person engages in vaginal intercourse . . . with a victim who is

a child under the age of 13 years and the defendant is at least

12 years old and is at least four years older than the victim.”

N.C. Gen. Stat. § 14-27.2(a)(1) (2013). Our Supreme Court has

held that “intercourse” means “the slightest penetration of the
 -8-
sexual organ of the female by the sexual organ of the male.”

State v. Murry, 277 N.C. 197, 203, 176 S.E.2d 738, 742 (1970).

 Here, M.B. explicitly testified at trial that defendant put

his penis into her vagina. She told Trooper Osborne that she

“didn’t know what he was doing,” but defendant said that it was

“just sex.” M.B. testified that the first time defendant put

his penis into her vagina, it caused her pain because she “never

did it before.” When asked how many times defendant put his

penis into her vagina, M.B. said “a couple,” and that it

happened “more than once,” but could not remember exactly how

many times it occurred.

 Defendant and the State are in agreement that M.B.’s

testimony supported two charges of first degree rape. Indeed,

M.B. testified that defendant inserted his penis into her vagina

“more than once,” and under any definition of the term, “a

couple” indicates more than one. However, defendant contends

that since M.B. testified that defendant inserted his penis into

her vagina “a couple” of times, without identifying more than

two acts of penetration, the State failed to present substantial

evidence of three counts of rape. We agree.

 The dissent relies on Detective Parker’s testimony

regarding her post-interview report to reach the conclusion that
 -9-
the State presented substantial evidence of three counts of

rape. In the report, Detective Parker indicated that defendant

admitted to having intercourse with M.B. three times. We do not

believe that Detective Parker’s conclusion regarding defendant’s

statements amounts to substantial evidence supporting three

charges of first degree rape. Defendant openly conceded that he

committed sexual acts with M.B., such as rubbing his penis,

hands, and a vibrating toothbrush on her vagina and performing

oral sex on her. Thus, when asked by Detective Parker if he had

“sex” with M.B. about three times when she lived with him in

North Carolina, he answered in the affirmative. However,

defendant did not admit to penetrating M.B.’s vagina with his

penis. Detective Parker’s testimony revealed that defendant

seemed confused about what her definition of “sex” was:

 Q: Do you recall Mr. Blow ever telling you
 in his – from his mouth that “I’ve had sex
 with [M.B.] three times”?

 A: I would ask him how many times and he
 said “about once every three months.”

 . . .

 Q: Okay. And from your calculation from that
 to him in the video you indicate you believe
 that was about three times?

 A: Yes.

 Q: And you got him – when you said that he
 -10-
agreed with you.

A: Yes.

Q: He said okay. And there was a point later
in the video, a little over an hour into
your interview with him . . . that Mr. Blow
indicated to you that – he says “you keep
saying that I put my penis in her,” but he
tells you that that didn’t happen, and you
explain to him, “well, that’s what sex is”?

A: Uh-huh.

Q: . . . It may be difficult, but I’m –
because I’m referring to a specific point
where near the end, before you go out the
second time, for about a 12- to 14- minute
period you and he are discussing what sex
is.

A: Uh-huh.

Q: Do you recall that point?

A: I do recall.

Q: Okay. And – and at that point he is
telling you again that he did not put his
penis inside of her, that [it] was on her?

A: Uh-huh.

Q: And that – and in fact, actually, I think
you made a point of it yesterday in your
direct that he kept saying “on” not “in”?

A: Yes.

Q: He said that a lot?

A: He did.
 -11-
Thus, defendant’s admission to three instances of “sex” with

M.B. does not equate to an admission of vaginal intercourse. He

openly admitted to performing oral sex on M.B., among other

sexual acts, but vehemently denied penetrating her vagina with

his penis.

 Furthermore, Detective Parker herself conceded on cross

examination that defendant later clarified his statements and

denied penetrating M.B. with his penis. Specifically, Detective

Parker testified as follows:

 Q: You indicate in your report that Mr. Blow
 admitted to actually having intercourse with
 [M.B.]; is that right?

 A: Yes.

 Q: Do you recall that Mr. Blow actually told
 you that if there had been changes to [M.B.]
 that any penetration would have been
 accidental?

 A: I recall him saying that, yes.

 Q: Okay. And you recall him telling you
 throughout the interview that he had never
 put anything, I think his words were, “I
 never stuck anything in [M.B.]”?

 A: Yes.

 Q: He told you he never put his finger in
 [M.B.]?

 A: Yes.

 Q: He told you that he had never put the
 -12-
 toothbrush in [M.B.]; is that right?

 A: Yes.

 Q: He told you that he never put his penis
 in [M.B.]?

 A: Yes.

 Q: And he told you that, would it be fair to
 say, about ten times?

 A: Sure.

 Given the context of Detective Parker’s testimony, we do

not believe that her assertion in her report that defendant

admitted to having sex with M.B. three times was a reasonable

account of defendant’s statements. This may explain the State’s

passing mention of this argument in its brief on appeal.2 Even

giving the State every reasonable inference, defendant’s

admission to multiple acts of sexual abuse, but adamant denial

of penetrating M.B.’s vagina with his penis, does not amount to

evidence that a “reasonable mind might accept as adequate to

support” the conclusion that defendant inserted his penis into

2
 Specifically, the entirety of the State’s argument on this
issue is the following: “The State also submitted evidence of
Defendant’s extrajudicial admission to an interviewing office
[sic] to having had sex with the child about once every three
months over the nine month period she resided in his house since
her move in April 2010. Or, as he acceded, according to his
previous estimation, ‘about three times.’”
 -13-
M.B.’s vagina on three separate occasions. Denny, 361 N.C. at

664-665, 652 S.E.2d at 213.

 The State therefore relies on the definition of “a couple”

to argue that it presented substantial evidence of three counts

of first degree rape. As the State notes, Merriam-Webster

Dictionary provides several definitions for the term “couple,”

one of which being “an indefinite small number” that may be used

interchangeably with the term “few.” Additionally, defendant

points us towards other sources indicating that “a couple” can

also be defined as “two individuals of the same sort considered

together”; “two similar things”; “two of the same species or

kind, near in place or considered together”; and “a pair.”3

 However, we need not determine whether “a couple” means

“two” or “more than two” of something to rule on this matter.

Instead, we agree with defendant’s contention that the ambiguous

nature of the term “a couple” causes M.B.’s testimony to raise

no more than a suspicion or conjecture that more than two

instances of rape occurred. If we agree with the State that

3
 Although not a controlling source of authority on this
distinction, we find the following anecdote indicative of the
common usage of the term “a couple.” When a father asked his
four-year-old daughter if he could take “a couple” of french
fries from her plate, the daughter said yes. But when the
father took four french fries, the little girl took back two of
them and stated emphatically, “A couple means two!”
 -14-
testimony of “a couple” instances of conduct amounts to

substantial evidence supporting “an indefinite small number” of

charges, we open the door to speculation as to how many charges

can fit within those bounds. Using this logic, the State could

potentially charge a defendant with four or five crimes just as

it could with three, based only on an allegation that the

criminal conduct happened “a couple” of times. We believe that

this is the type of “speculation” and “conjecture,” State v.

Brown, 162 N.C. App. 333, 338, 590 S.E.2d 433, 437 (2004), that

cannot defeat a motion to dismiss. See State v. McDowell, 217

N.C. App. 634, 636, 720 S.E.2d 423, 424 (2011) (“A motion to

dismiss should be granted . . . when the facts and circumstances

warranted by the evidence do no more than raise a suspicion of

guilt or conjecture since there would still remain a reasonable

doubt as to defendant’s guilt.”).

 Accordingly, although “the unsupported testimony of the

prosecutrix in a prosecution for rape has been held in many

cases sufficient to require submission of the case to the jury,”

State v. Carter, 198 N.C. App. 297, 306, 679 S.E.2d 457, 462

(2009), M.B.’s ambiguous characterization of the number of times

defendant inserted his penis into her vagina as “a couple” was
 -15-
insufficient to charge defendant with three counts of first

degree rape.

 II. Motion to Continue

 Defendant next contends that the trial court erred in

denying defendant’s motion to continue, as defense counsel

learned of a potential defense witness on the eve of trial. We

disagree.

 Ordinarily, the ruling on a motion to continue is

“addressed to the discretion of the trial court,” and it is not

subject to review absent “a gross abuse of that discretion.”

State v. Taylor, 354 N.C. 28, 33, 550 S.E.2d 141, 146 (2001).

However, “when a motion to continue raises a constitutional

issue, the trial court’s ruling is fully reviewable on appeal.”

Id. Even if a constitutional issue is raised, denial of a

motion to continue is grounds for a new trial only if the

defendant can show that the ruling was both erroneous and

prejudicial. State v. Garner, 322 N.C. 591, 594, 369 S.E.2d

593, 596 (1988).

 “It is implicit in the constitutional [guarantee] of

assistance of counsel . . . that an accused and his counsel

shall have a reasonable time to investigate, prepare and present

his defense.” State v. McFadden, 292 N.C. 609, 616, 234 S.E.2d
 -16-
742, 747 (1977). “However, no set length of time is guaranteed

and whether defendant is denied due process must be determined

under the circumstances of each case.” Id. Here, defendant

argues that he was denied this right because his defense counsel

learned of the psychological reports conducted on defendant and

M.D. on the eve of trial and did not have adequate time to

subpoena the psychologist to testify. At the hearing on the

motion to continue, defense counsel conceded that defendant had

knowledge of these proceedings due to his participation in the

psychological evaluations and that defense counsel had two

months to confer with defendant in order to prepare their case

before trial. Based on these circumstances, McFadden, 292 N.C.

at 616, 234 S.E.2d at 747, we conclude that the two-month period

during which defense counsel could have learned of the

psychological reports had there been diligent communication with

his client amounted to a “reasonable time to investigate,

prepare and present his defense.” McFadden, 292 N.C. at 616, 234

S.E.2d at 747. Thus, we find no error in the trial court’s

denial of defendant’s motion to continue.

 Additionally, even if the denial of the motion to continue

was erroneous, defendant has failed to demonstrate prejudice.

See Garner, 322 N.C. at 594, 369 S.E.2d at 596. During the
 -17-
cross-examination of M.B., defense counsel was allowed to

introduce relevant parts of the psychologist’s written report.

Specifically, defense counsel had M.B. read to the jury a

portion of her psychological evaluation which stated, “[M.B.]

denies being physically or sexually abused. She denies being

afraid of either parent or any other relatives.” After reading

this part of the report, M.B. testified that she had very little

recollection of the psychological examination and did not have

any recollection of denying sexual abuse by defendant. Thus,

because defendant was still able to use the psychological

reports at trial to impeach M.B.’s testimony, the denial of the

motion to continue did not prevent defendant from “present[ing]

his defense,” Carter, 184 N.C. App. at 712, 646 S.E.2d at 851,

and he has failed to demonstrate the prejudice required to be

granted a new trial.

 Accordingly, we find no error in the trial court’s denial

of defendant’s motion to continue.

 Conclusion

 For the foregoing reasons, we vacate the underlying

judgment entered for the third count of first degree rape,

number 11 CRS 55728. We find no error in the trial court’s

denial of defendant’s motion to continue. Because the sentences
 -18-
entered on the three judgments for first degree rape are to be

served concurrently, this decision does not alter defendant’s

sentence, and we need not remand the matter to the trial court.

 JUDGMENT IN NUMBER 11 CRS 55729 VACATED.

 NO ERROR AS TO REMAINING JUDGMENTS.

 Judge MCCULLOUGH concurs.

 Judge ERVIN concurs in part and dissents in part by
 separate opinion.
 NO. COA14-133
 NORTH CAROLINA COURT OF APPEALS
 Filed: 4 November 2014
STATE OF NORTH CAROLINA

 Henderson County
 v.
 Nos. 11 CRS 55726-31

CHARLES STEVENS BLOW, JR.

 ERVIN, Judge, concurring in part and dissenting in part.

 Although I concur in the Court’s determination that the

trial court did not err by denying Defendant’s continuance

motion, I am unable to join the portion of the Court’s opinion

that concludes that the trial court erred by denying Defendant’s

motion to dismiss one of the three first degree rape charges

that had been lodged against him. After carefully reviewing the

record in light of the applicable law, I am compelled to

conclude, contrary to the result reached by my colleagues, that

the State presented substantial evidence that was sufficient, if

believed, to support the jury’s decision to convict Defendant of

three counts of first degree rape. As a result, although I

concur in the remainder of the Court’s opinion, I respectfully

dissent from my colleagues’ decision to vacate one of

Defendant’s first degree rape convictions for insufficiency of

the evidence.
 -2-
 In the course of concluding that the State failed to

present sufficient evidence to support the jury’s decision to

convict Defendant of three counts of rape, the Court focuses on

the testimony of the alleged victim, M.B., who stated that

Defendant put his penis into her vagina “a couple times.” In

the course of clarifying this portion of her testimony, M.B.

further stated that, although Defendant penetrated her vagina

with his penis on more than one occasion, she could not remember

exactly how many times Defendant engaged in this unlawful

conduct. Although I agree with my colleagues that this portion

of M.B.’s testimony, viewed in isolation, does not suffice to

support a determination that Defendant raped M.B. on three

different occasions, the record also contains the testimony of

Detective Dottie Parker of the Henderson County Sheriff’s

Office, who testified that, in the course of discussing M.B.’s

allegations with her, Defendant admitted having “had sex” with

M.B. about once every three months over a seven month period and

that he had engaged in this conduct “about three times.” Given

that, “when considering a motion to dismiss, the evidence must

be viewed in the light most favorable to the State, giving the

State the benefit of ‘every reasonable inference to be drawn

therefrom,’” State v. Denny, 361 N.C. 662, 665, 652 S.E.2d 212,
 -3-
213 (2007) (quoting State v. Lowery, 309 N.C. 763, 766, 309

S.E.2d 232, 236 (1983)), I believe that Defendant’s admission

that he had “had sex” with M.B. “about three times,” when taken

in the light most favorable to the State, sufficiently supports

the trial court’s decision to allow the jury to consider the

issue of Defendant’s guilt of three counts of first degree rape

and dissent from my colleagues’ decision to the contrary.

 In rejecting the analysis set out in this concurring and

dissenting opinion, the Court relies upon two essential

arguments. First, my colleagues appear to argue that

Defendant’s statement that he had “had sex” with M.B. did not

constitute an admission that Defendant had vaginally penetrated

her with his penis on those occasions. However, when read in

context, I believe that Defendant’s statements, as recounted by

Detective Parker, are reasonably susceptible to the

interpretation, which is consistent with ordinary parlance, that

Defendant used the term “having sex” as a shorthand reference to

engaging in vaginal intercourse. Secondly, my colleagues argue

that various statements that Defendant made during the remainder

of his conversation with Detective Parker establish that he did

not acknowledge having vaginal intercourse with M.B. more than

twice. Although Defendant made a number of different statements
 -4-
during his conversation with Detective Parker, I believe that

the extent, if any, to which his subsequent comments

contradicted, rather than explained, his admission to having

“had sex” with M.B. on three different occasions was a question

for the jury rather than a matter to be resolved by the trial

court in addressing Defendant’s dismissal motion. State v.

Wagoner, 249 N.C. 637, 639, 107 S.E.2d 83, 85 (1959) (stating

that “[t]he contradictory statements made by the defendant to

the investigating officer do not cancel out the testimony given

in the trial”). As a result, given that I am unable to agree

with my colleagues that the record fails to contain sufficient

evidence to support all three of Defendant’s rape convictions

and would uphold the denial of Defendant’s dismissal motion

relating to Defendant’s third rape conviction, I concur in the

Court’s decision in part and dissent from that decision in part.